UNITED STATES, Appellee

v

WALTER P. CUEN, Private, U. S. Marine Corps, Appellant

9 USCMA 332, 26 CMR 112

No. 11,027

Decided June 6, 1958

Commander *John P. Gibbons,* USN, was on the brief for Appellant, Accused.

Commander *Craig McKee,* USN, and *Lieutenant Colonel Charles H. Beale, Jr.,* USMC, were on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

Two issues are raised on this appeal, one relating to the instructions on findings and the other to the propriety of the convening authority's action on the sentence. They arose in the following manner. The accused was tried by a special court-martial convened at Camp Courtney, Okinawa, for the offenses of absence without leave and two specifications alleging assault and battery in violation of Articles 86 and 128 of the Uniform Code of Military Justice, 10 USC §§ 886 and 928, respectively. A plea of not guilty was entered as to all offenses. The prosecution in routine fashion presented its case in chief, at the conclusion of which the defense rested without offering any evidence on the accused's behalf. Opposing counsel each presented a closing argument after which the president instructed the court members on the essential elements of the offenses charged. The president then charged the court as follows:

"PRES: The court is further advised: That the accused must be presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt; that in the case being considered, if there is a reasonable doubt as to the degree of guilt, the finding must be in a lower degree as to which there is no reasonable doubt; and that the burden of proof to establish the guilt of the accused beyond a reasonable doubt is upon the government."

The court retired to deliberate on the findings and upon reopening announced that it found the accused guilty of all charges and specifications. Personal data concerning the accused was intro-

334

duced and evidence of two previous convictions was shown. Counsel then made final argument and the court retired to consider an appropriate sentence. No instructions on the maximum authorized sentence were given. Upon reopening, the president announced the following sentence:

"... it is my duty as the president of this court to inform you that the court in closed session, and upon secret written ballot, two-thirds of the members present at the time the vote was taken concurring, sentences you to: To be discharged from the Service with A Bad Conduct Discharge, *to be fined $65.00 a month for a period of 6 months,* to be confined at hard labor for a period of 6 months."

The court adjourned following the announcement.

The special court convening authority approved the sentence but suspended the execution of the punitive discharge. The action also provided that the "forfeitures" shall apply to pay and allowances becoming due on and after the date of the action. The supervisory authority, pursuant to the recommendation of the division legal officer, disapproved the findings of guilt of the unauthorized absence offense and approved only that portion of the sentence as approved and suspended by the convening authority, as provided for "bad conduct discharge, confinement at hard labor for four months and *forfeiture* of $65.00 per month for four months." The findings and sentence were subsequently approved by a Navy board of review.

## I

The accused contends that the president's failure to instruct in accordance with Article 51(c)(2) of the Code, supra, 10 USC § 851, was prejudicial. Article 51(c) comprises the so-called mandatory instructions and requires the law officer of a general court-martial or the president of a special court-martial —as the case may be—to "instruct the court as to the elements of the offense and charge the court" as follows:

"(1) that the accused must be presumed to be innocent until his guilt is established by legal and competent evidence beyond reasonable doubt;

"(2) that in the case being considered, if there is a reasonable doubt as to the guilt of the accused, the doubt must be resolved in favor of the accused and he must be acquitted;

"(3) that, if there is a reasonable doubt as to the degree of guilt, the finding must be in a lower degree as to which there is no reasonable doubt; and

"(4) that the burden of proof to establish the guilt of the accused beyond reasonable doubt is upon the United States."

It is noted that the second part of the mandatory instructions requiring that the question of reasonable doubt be resolved in favor of an accused was omitted from the president's charge. The Government concedes that this instructional failure was prejudicial. We likewise agree that the failure to instruct on reasonable doubt as required by Article 51(c)(2), where an accused has entered a plea of not guilty, constitutes prejudicial error which requires a rehearing. United States v Clay, 1 USCMA 74, 1 CMR 74. In view of the possibility that a rehearing will occur, it is advisable to consider the remaining issue.

## II

The accused claims here as he did below that the reviewing authority's action in converting a fine into a forfeiture amounted to an illegal commutation which now renders that portion of the sentence void. In support of this contention, he relies heavily upon paragraph 88c, Manual for Courts-Martial, United States, 1951, which provides that: "a fine may not be changed to a forfeiture, nor a forfeiture to a fine, as this action would constitute commutation." He insists that only the President of the United States and the Secretary of a Department (or such Under Secretary or Assistant Secretary as may be designated by him) are authorized to commute a sentence. Paragraph 105a, Manual, supra.

The Government, on the other hand, urges that the reviewing authority's ac-

tion on the sentence was not a commutation. It argues that the reviewing authority merely "substituted" the word "forfeitures" in order to convey the true intent of the court-martial which "obviously inadvertently used the word 'fined'." Support for this position is claimed by reference to the fact that the word "fine" was not stated as a lump sum figure nor was it made payable to the United States.[1] Furthermore, the imposition of a fine is usually accompanied by a provision in the sentence that in the event the fine is not paid, "the person fined shall, in addition to any period of confinement adjudged, be further confined until a fixed period considered an equivalent punishment to the fine has expired." Paragraph 126*h* (3) of the Manual, supra. The board of review in affirming the findings and sentence as approved held the use of the word "fine" was due "to ignorance of its legal meaning" and that the intent of the court-martial was to adjudge forfeitures.

As a background for consideration of this issue a proper understanding of the essential differences between a fine and a forfeiture should prove helpful. A fine which is in the nature of a judgment makes one "pecuniarily liable in general to the United States for the amount of money specified in the sentence." Paragraph 126*h*(3), Manual, supra. A forfeiture, on the other hand, merely deprives one "of the amount expressly stated in the sentence and applies for the number of months or days expressly stated." Paragraph 126*h*(2) of the Manual, supra. Stated differently, one against whom a fine has been adjudged owes to the Government the amount of money specified in the sentence whether he receives any compensation or not. In order to satisfy this debt, the Government may bring suit in the same manner as it would to collect any other debt due and owing the United States.[2] A forfeiture, however, deprives one of his right to receive an amount of money to which he otherwise would be entitled. A sentence which includes a forfeiture thereby relieves the Government to the extent provided in the sentence of its obligation to pay the amount due and forfeited and an accused has no legal right to the amount so forfeited. 1 Comp Gen 291, December 1, 1921.

Historically, in the military service fines were "mainly" imposed with a view to reimbursing the Government for some pecuniary loss occasioned by an offense committed by one of its members. Winthrop, Military Law and Precedents, 2d ed, 1920 Reprint, page 398.[3]

---

[1] Appendix 13, Manual for Courts-Martial, supra, lists the following sentence forms where a court-martial adjudges a fine:

"21. To pay to the United States a fine of $——, [and to be confined at hard labor until said fine is so paid, but for not more than —— (months) (years)].

"22. To pay to the United States a fine of $——, [(and) to be confined at hard labor for —— (months) (years)], [and to be further confined at hard labor until said fine is so paid, but for not more than —— (months) (years) in addition to the —— (months) (years) hereinbefore adjudged]."

[2] Title 18 USC § 3565, reads as follows:

"Collection and payment of fines and penalties.

"In all criminal cases in which judgment or sentence is rendered, imposing the payment of a fine or penalty, whether alone or with any other kind of punishment, such judgment, so far as the fine or penalty is concerned, may be enforced by execution against the property of the defendant in like manner as judgments in civil cases. Where the judgment directs imprisonment until the fine or penalty imposed is paid, the issue of execution on the judgment shall not discharge the defendant from imprisonment until the amount of the judgment is paid. (June 25, 1948, ch. 645, § 1, 62 Stat. 837.)"

[3] Fines were expressly recognized as a form of punishment under Article of War 80, Act of June 4, 1920, 41 Stat 787, which provided for the offense of dealing in captured or abandoned property and Article of War 94, Act of June 4, 1920, supra, which provided for the offense of frauds against the Government. Paragraph 103*g*, Manual for Courts-Martial, U. S. Army, 1928.

336

In the 1949 Manual for Courts-Martial, U. S. Army, it was stated that a fine "should not ordinarily be adjudged" unless an accused has been unjustly enriched at the expense of the Government. Paragraph 117c, Section B, Manual for Courts-Martial, U. S. Army, 1949. Cf. United States v Gabriel, 3 CMR 407. A similar statement is also found in the present Manual. Paragraph 127c, Section B, supra. In addition, the current Manual authorizes the imposition of fines instead of forfeitures "in all cases in which the applicable article authorizes punishment as a court-martial may direct." Paragraph 126h(3), supra. In United States v Hounshell, 7 USCMA 3, 21 CMR 129, we held that an enlisted man could not be subjected to both fine and forfeiture in the same sentence.[4] We said in that case that a fine could not be imposed against an enlisted accused unless the case falls within the additional punishment provisions of Section B, paragraph 127c, Manual for Courts-Martial, supra. The additional punishment section states that a fine may be adjudged against an enlisted person "in lieu of forfeitures" providing punitive discharge is also adjudged. It is clear, therefore, that in the instant case the court-martial could properly impose a fine against the accused instead of forfeitures.[5]

It remains next to consider what was the court-martial's intent in adjudging a sentence which included a "fine." The board of review, which considered this case relied upon our recent holding in United States v Bell, 8 USCMA 193, 24 CMR 3, in reaching its conclusion that the convening authority's action was proper. In the *Bell* case, supra, we held that the convening authority could substitute the word "dismissal" for the phrase "to be dishonorably discharged from the service" which was used in the court-martial sentence of a commissioned officer. We said in that case that whether the sentence is one of dismissal or dishonorable discharge, the "manifest intention of the court-martial" was to separate the accused from the service under conditions of dishonor. Additionally, we noted that military tribunals have consistently held through the years that where a court-martial adjudges a dishonorable discharge in a case in which the accused is an officer, the sentence may be effectuated by dismissal.

Our present case, however, cannot be decided on the rationale of the *Bell* case, supra, for here the court-martial sentence was perfectly correct and proper. We cannot speculate that the imposition of a "fine" rather than "forfeitures" was due to inadvertence or ignorance on the part of the court members. The court-martial sentence was in conformity with the permissible additional punishments provided for in Section B, paragraph 127c, Manual for Courts-Martial, supra, in that the court adjudged a punitive discharge but did not adjudge forfeitures. Furthermore, the mere fact that the court did not direct that the fine be made payable to the United States is not crucial for both fines and forfeitures accrue to the United States "and cannot be adjudged by a court-martial for the benefit of any individual." Paragraph 126h(1), Manual, supra.

The Government concedes that a fine "could have been adjudged by this court-martial" but insists that is not what

---

[4] The rule is otherwise in the case of an officer. United States v McElroy, 3 USCMA 606, 14 CMR 24, and United States v DeAngelis, 3 USCMA 298, 12 CMR 54.

[5] Although the Manual provides that a fine "should not ordinarily be adjudged against a member of the armed forces unless the accused was unjustly enriched," this provision is directory rather than mandatory. Section B, supra. Furthermore, it would appear that the draftsmen of the Manual, by use of the term "ordinarily," contemplated that there would be cases in which a fine would be adjudged even though unjust enrichment of the accused was not present. For example, see the case of United States v Galvan, 9 CMR 156, where the sentence included a fine, although the accused was convicted of the offense of drunken driving and fleeing the scene of an accident.

the court intended to do. We are unable to adhere to this contention. We merely look to the four corners of the sentence and if valid on its face we cannot permit inquiry into the intent of the court-martial which adjudged it. Cf. United States v Nedeau, 7 USCMA 718, 23 CMR 182.

The argument is made that a fine must be adjudged in a lump sum figure whereas here, the fine was ▮▮▮▮▮ adjudged at the rate of "$65.00 a month for a period of 6 months." Although it is true that it is preferable to state the amount of fine in a lump figure, the failure to do so is not a critical circumstance. The sentence is not so vague or indefinite as to be void. Cf. United States v Gilgallon, 1 USCMA 263, 2 CMR 170. In effect the court-martial fined the accused a sum of $390.00 and provided that the sum be paid in equal amounts of $65.00 each over a period of six months. This in itself is not such an unusual factor when it is remembered that in determining the amount of a fine "the court should consider the ability of the accused to pay." Paragraph 126$h$(1), Manual for Courts-Martial, supra. Furthermore, permitting an accused to pay a fine in installments over a period of time is recognized in the Federal courts. United States v Baird, 241 F 2d 170 (CA 2d Cir) (1957). See also Butterfield v Taylor, 50 Ohio App 421, 198 NE 600. It is discretionary with a court-martial the manner in which a fine is to be paid. Surely an accused cannot complain if a court in assessing a fine is lenient in the manner of providing when and in what amounts such fine should be paid rather than demanding immediate total pay-

ment. Cf. Dunaway v Hodge, 127 Ga 690, 55 SE 483 (1906).

This brings us to the ultimate question of whether the convening authority's action in substituting ▮▮▮▮▮ "forfeitures" for the "fine" was an illegal commutation. See Article 71(a) and (b), 10 USC § 871.[6] In United States v Beezley, 63 BR 307, a board of review was called upon to consider the legality of the reviewing authority's action which proposed to "mitigate" a sentence by substituting a forfeiture of $50.00 per month for a period of ten months in lieu of a fine of $500.00 adjudged by the court. The board held that since there was a "substantial difference in the pecuniary liability attached to a fine as contrasted with a forfeiture," the reviewing authority's action constituted an unauthorized exercise of his mitigating power. That portion of the sentence providing for forfeitures was set aside. The next case to deal with this question was United States v Anderson, 75 BR 341. There the board had to determine whether a sentence to a lump sum forfeiture of $1500.00 was in excess of, or more severe than, a sentence to pay a fine of $1500.00. At the accused's original trial the court imposed a sentence which included a fine of $1500.00. The reviewing authority, however, disapproved the sentence and ordered a rehearing. At the second trial a sentence which included a lump sum forfeiture of $1500.00 was adjudged. After noting that the conclusion reached in the *Beezley* case was "not controlling as to this case," the board held the lump sum forfeiture was valid. In the course of its opinion it said:

---

[6] "(a) No court-martial sentence extending to death or involving a general or flag officer may be executed until approved by the President. He shall approve the sentence or such part, amount, or commuted form of the sentence as he sees fit, and may suspend the execution of the sentence or any part of the sentence, as approved by him, except a death sentence.

"(b) No sentence extending to the dismissal of a commissioned officer (other than a general or flag officer), cadet, or midshipman may be execut-

ed until approved by the Secretary concerned, or such Under Secretary or Assistant Secretary as may be designated by him. He shall approve the sentence or such part, amount, or commuted form of the sentence as he sees fit, and may suspend the execution of any part of the sentence as approved by him. In time of war or national emergency he may commute a sentence of dismissal to reduction to any enlisted grade. A person so reduced may be required to serve for the duration of the war or emergency and six months thereafter."

". . . As both a forfeiture and fine are in effect recoverable from pay, the only substantial difference between the effects of the two penalties lies in the fact that a fine is a general obligation which continues after entitlement to pay ceases. It follows that, other things being equal, a sentence to a lump sum forfeiture is not a more severe penalty than a sentence to pay a lump sum fine of the same amount and, therefore, that a sentence in this case that the accused pay a forfeiture of $1500 is legally sustainable."

The clear implication contained in the *Anderson* case, supra, is that a forfeiture would be considered a lesser punishment than a fine. This would certainly appear to be true when it is realized that quite often a fine is accompanied by a provision whereby if it is unpaid an accused may be confined "until a fixed period considered an equivalent punishment to the fine has expired." Paragraph 126*h*(3), Manual, supra. United States v Hounshell, supra; cf. Wagner v United States, 3 F2d 864 (CA 9th Cir) (1925). The punishment in such cases is still the fine and the additional period of confinement adjudged for nonpayment is merely the mode of executing the sentence, that is of enforcing the payment of the fine. It has been held by some courts that serving time for failure to pay a fine does not operate to discharge the fine, while other courts have reached a contrary conclusion. See cases collected in 49 ALR 392. The determination of whether or not to imprison for nonpayment of a fine is discretionary with the court. Boyd v Archer, 42 F 2d 43 (CA 9th Cir) (1930). Imprisonment to coerce payment of a fine, however, may only be enforced where such "consequence has been prescribed in the imposition of the sentence." Hill v United States, 298 US 460, 56 S Ct 760, 80 L ed 1283; cf. Boyd v Archer, supra, where the court held that where the trial court did not direct additional imprisonment for failure to pay a fine, that part of the commitment inserted by the clerk calling for additional imprisonment on default was void.

We have earlier referred to para-graph 88*c*, Manual, supra, which states that "a fine may not be changed to a forfeiture, nor a forfeiture to a fine, as this action would constitute commutation." This statement is not only misleading but is questionable as well. As we have already observed, a fine has greater punitive characteristics than a forfeiture. In a word, it is greater punishment. To speak in terms of commuting a forfeiture to a fine is inaccurate for such action has nothing to do with commutation but is really a question of aggravation. By the same token, changing a fine to a forfeiture also has nothing to do with commutation but is simply a matter of mitigation. This concept is clearly recognized in paragraph 127*c*, Section B, Manual, supra, which permits the imposition of a fine "in lieu of forfeitures." Section B, supra, which is entitled "Permissible additional punishments" affirmatively indicates that a fine is greater than a forfeiture and for that reason it may be imposed as "additional" punishment. We hold, therefore, that that portion of paragraph 88*c* which prohibits the reduction of a fine to a forfeiture is erroneous.

From what we have said it follows, therefore, that all other factors being equal, a sentence which includes a fine is a more severe form of punishment than one in which a forfeiture has been adjudged. There exist distinctive characteristics in a fine which are not present in a forfeiture. The first is that a fine represents a debt which is due and owing the Government. Grier v Kennan, 64 F 2d 605 (CA 8th Cir) (1933). The second is that such debt is payable regardless of whether an accused is paid or not and may be collected in the same manner as any other civil monetary obligation including execution against the property of the debtor. Smith v United States, 143 F 2d 228 (CA 9th Cir) (1944). Third, a sentence may provide that a period of confinement be served if the debt is not paid. Hill v United States, supra; United States v DeAngelis, supra. Accordingly, we conclude that a forfeiture is a lesser penalty than a fine and that a reviewing authority in the exercise of his mitigating powers

**339**

may reduce a fine to a forfeiture. Such action does not constitute an illegal commutation but merely a reduction in the degree and quantity of punishment. Cf. United States v Goodwin, 5 USCMA 647, 18 CMR 271.

The sentence in the instant case as approved by the reviewing authority and affirmed by the board of review is a bad-conduct discharge, forfeiture of $65.00 per month for four months and confinement at hard labor for a like period. This represents the maximum sentence which may be adjudged in the event of a rehearing.

The decision of the board of review is reversed. A rehearing may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree with my associates that the failure of the president to instruct in accordance with Article 51 (c), Uniform Code of Military Justice, 10 USC § 851, requires that this case be reversed. However, I cannot accept the conclusion of the principal opinion that a reviewing authority in the exercise of his mitigating powers may reduce a fine to a forfeiture. Neither can I follow the doctrine that a forfeiture is merely a lesser form of punishment than a fine, for there are so many unknowns with which each may be weighted, and they are so basically different, that any comparison is unrealistic.

The Manual for Courts-Martial, United States, 1951, lays down the rule that the changing of a fine to a forfeiture is not a mitigation but rather a commutation of sentence which can only be exercised by the President or Secretary of a Department. Manual for Courts-Martial, supra, paragraph 88c. I believe that to be a sound and logical principle, and I find no reason to reject it. In military law, the word "commutation" is a term of art meaning "the power to change a punishment to one of a different nature." Manual for Courts-Martial, supra, paragraph 105. Mitigation, on the other hand, is a change only of degree within the same species. See United States v Goodwin, 5 USCMA 647, 18 CMR 271. The reviewing authority in the instant case, by changing the nature of the punishment, exercised a power which he did not possess and, therefore, the forfeitures which he imposed were illegal.

I have considered the argument of the board of review that United States v Bell, 8 USCMA 193, 24 CMR 3, is dispositive of this appeal as it was the intention of the court-martial to impose forfeitures rather than a fine. The *Bell* case, as my associates demonstrate, is clearly distinguishable. In the instant case, the sentence read in open court was susceptible of only one interpretation, and that interpretation was legal. Under such a factual situation, even though there is much to be said in favor of the contention that the court did not mean what it actually announced, I do not think it wise to delve· behind the words given in open court. We should not speculate on what meaning a court intended when there is no ambiguity. The words used announce an unusual but recognized and legal sentence.