**UNITED STATES**

v.

**Brooks A. BENFORD, Jr., 049 56 1352 Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 87 2875.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 19 March 1987.

Decided 22 Aug. 1988.

Maj. R.P. WALTON, USMC, Appellate Defense Counsel.

Lt. V.C. GILNER, JAGC, USNR, Appellate Defense Counsel.

Lt. THOMAS J. SEATON, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, C.J., COUGHLIN Senior Judge, and RUBENS, J.

COUGHLIN, Senior Judge:

We have examined the record of trial, the assignment of error, and the Government's reply thereto, and have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

Appellant's sole assignment of error is as follows:

> THE TRIAL JUDGE ERRED IN DETERMINING THE APPELLANT DID NOT SUFFICIENTLY PROTEST BEING HELD BEYOND HIS EXPIRATION OF ACTIVE SERVICE.

■ Article 2, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 802, provides that "[m]embers of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment," are subject to the Uniform Code of Military Justice "until such person's active service has been terminated in accordance with law or regulations promulgated by the Secretary concerned." Thus the appellant, even though beyond his end of active service (EAS) when he committed the instant offenses, was still subject to the UCMJ while so retained on active duty. *See United States v. Fitzpatrick*, 14 M.J. 394, 397 (C.M.A.1983), and cases cited therein. However, the Court in *Fitzpatrick* held that, under its precedents, the Government would lose

> jurisdiction to try a servicemember unless either (a) prior to his date of separation, some official action has been taken by which we "can say that at some precise moment the sovereign had authoritatively signaled its intent to impose its legal processes upon the individual," *United States v. Smith*, 4 M.J. 265, 267 (C.M.A.1978); or (b) after the member's date of separation, he does not object "to his continued retention"; or (c) if the servicemember "objects to his continued retention" on active duty after his date of separation and demands his discharge or release, the Government takes official action with the view to prosecution within "a reasonable time" after the servicemember's protest of his retention in the service.

*Fitzpatrick, supra* at 397, (quoting *United States v. Hutchins*, 4 M.J. 190, 192 (C.M.A. 1978)).[1]

The ruling of the *Fitzpatrick* decision, *supra*, and paragraph 11*d* of the Manual for Courts–Martial, United States, 1969 (Revised Edition) (1969 MCM), formed the basis for Rule for Courts–Martial (R.C.M.) 202. Manual for Courts–Martial, United

---

1. We wholly agree with Chief Judge Everett's view that court-martial jurisdiction over a servicemember continues until his military status is terminated by separation, even when there has been a delay in separating him and he has actively requested to be separated. *Fitzpatrick, supra* at 397 n. 2. Nevertheless, like the Chief Judge, we are constrained to follow the higher Court's precedents on this issue, as well as Rule for Courts–Martial 202(c) (Manual for Courts–Martial, United States, 1984), based thereon. *United States v. Jones*, 23 M.J. 301 (C.M.A.1987) (a Court of Military Review is not generally free to ignore a precedent of the Court of Military Appeals) (citing *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982)). Perhaps the higher Court will revisit this matter of considerable importance to the integrity of the military justice system and then be "persuaded by 'the lessons of experience and force of better reasoning' that [their] prior decision is in error." *United States v. Carter*, 25 M.J. 471, 473 (C.M.A. 1988) (quoting *Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 2933, 97 L.Ed.2d 364 (1987) (quoting, in turn, *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406–08, 52 S.Ct. 443, 447–48, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting)).

States, 1984, Appendix 21, Analysis at A21–8.

■ The military judge in the instant case found that the Government did not lose jurisdiction to try the appellant, even though his EAS date had passed, because he did not object to his continued retention. He thus applied alternative (b) of the *Fitzpatrick* case, *supra,* which is part and parcel of R.C.M. 202(c). The appellant asserts in his assignment of error that the Government lost jurisdiction because the accused sufficiently objected to his continuation on active service beyond his EAS. However, we need not decide the merits of this ruling and assignment because, even assuming the sufficiency of the accused's protest, we conclude, contrary to the military judge, that the Government took "official action with the view to prosecution 'within a reasonable time' after the servicemember's protest of his retention in the service." *United States v. Fitzpatrick,* 14 M.J. at 397 (quoting *Hutchins,* 4 M.J. at 192); R.C.M. 202(c).

Our conclusion that the Government took such official action with a view to prosecution is based upon the following facts. Appellant enlisted in the U.S. Marine Corps with an EAS date of 19 September 1986. He was stationed in Okinawa with an established rotation date of 29 August 1986. Prior thereto, he was improperly placed on legal hold to effect reimbursement to the Army/Air Force Exchange Service for damages to a leased vehicle. Upon completion of such payments, the legal hold was lifted on 17 September 1986 (2 days prior to his EAS date) and a flight date of 9 October 1986 was scheduled for his return to the United States. On 8 to 9 October 1986, an enlisted Marine billeted in the same barracks as the accused had a $500 money order, a World Time Calculator, and a watch stolen. The World Time Calculator and the money order were discovered in the accused's sea bag on 9 October. An NIS agent advised the accused on that date that he was going to take him to the agent's office to talk to him about the stolen property. He was so transported by the agent, fingerprinted, voluntarily searched, and the

stolen watch was found in his locked garment bag. The accused surrendered his plane ticket to the United States to the NIS agent and he was again placed on legal hold by his command. The investigation into the larceny continued thereafter with the accused as its prime suspect. On 9 December 1986, NIS issued an interim report which concluded that "investigation is pending additional forensic analysis of the money order and calculator in question by USACIL" and, on 11 February 1986, NIS filed its final report concluding that "due to lack of additional logical leads this investigation is closed." In the meantime, the accused was confined on 10 December 1986 for offenses he committed that date and for which the instant appeal now lies.

The foregoing facts demonstrate that on 9 October 1986 the Government took "official action with a view to prosecution" so as to constitute attachment of court-martial jurisdiction over the accused even though his EAS had passed by that date. Such official action retains its legal vitality throughout the investigation of the larceny offenses. Before the completion of the investigation on 11 February 1987, additional official action was taken by the Government "with a view to prosecution" when, on 10 December 1986, the accused was placed in pretrial confinement for the instant offenses.

The military judge and the parties at trial apparently felt that since NIS did not apprehend the accused there was no official action taken on 9 October. Perhaps they were led astray by R.C.M. 202(c)(2) which states, "Actions by which court-martial jurisdiction attaches include: apprehension; imposition of restraint, such as restriction, arrest, or confinement; and preferral of charges." The error in their ways is readily apparent from the Court of Military Appeals decision in *United States v. Self,* 13 M.J. 132 (C.M.A.1982). The Court therein, in interpreting paragraph 11*d* of the 1969 MCM, the predecessor to R.C.M. 202(c), under a factual situation legally analogous to our instant one, stated,

Merely because the Manual provision does not cite as an example the summon-

ing of a suspect for an interview by law enforcement officers does not mean that this could not constitute "action with a view to trial." Indeed, as we observed in *United States v. Wheeley,* [6 M.J. 220 (C.M.A.1979) ], the paragraph 11*d* examples are not all-inclusive; other affirmative action can also be taken "with a view to trial." Any acts of military officials which authoritatively presage a court-martial, when viewed in the light of surrounding circumstances, are surely sufficient under paragraph 11*d* of the Manual for Courts–Martial to authorize retention on active duty for purposes of trial. Even if a trial by court-martial does not eventuate for one reason or another, clairvoyant positiveness has never been required.

*United States v. Self, supra* at 138.

Accordingly, the findings and sentence as approved on review below are affirmed.

BYRNE, C.J., and RUBENS, J., concur.