DeCICCO, Senior Judge:
A general court-martial composed of a military judge alone convicted the appellant in accordance with his guilty pleas of the theft of various military allowances totalling over *794 $18,000.00 in violation of Article 121, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 921. The appellant was sentenced to confinement for 18 months, reduction to the lowest enlisted grade, forfeiture of all pay and allowances and a dishonorable discharge. The sentence, as approved by the convening authority, included confinement for 12 months, the reduction in grade, a $5,000.00 fine and a bad-conduct discharge. The appellant raises three issues in this appeal.[1] We find no merit in them and affirm.

Facts

Pursuant to the solicitation of his supervisor, the appellant entered into a “marriage of convenience” in Las Vegas in May of 1990 with a Filipino national for the purpose of preventing her deportation from the United States. The appellant received compensation for entering into this marriage. According to plan, both he and his new wife then went their separate ways immediately after the wedding and were divorced about 6 months later.
Not being satisfied with the money he received for the sham marriage and the fraud perpetrated on immigration authorities, the appellant also decided to defraud the Navy. He purchased a blank rental agreement, filled it out and submitted it along with his marriage certificate to military payroll authorities, thereby falsely declaring that he was maintaining a residence in Los Angeles for his wife while he was assigned to duty aboard USS OLDENDORF in San Diego. He never informed payroll authorities of his divorce. Until 30 June 1993, the appellant claimed and was paid Family Separation Allowance [FSA], Basic Allowance for Quarters [BAQ] and Variable Housing Allowance [VHA] to which he was not entitled.
On 7 July 1993, the Naval Criminal Investigative Service [NCIS] opened an investigation into the appellant’s possible BAQ/ VHA/FSA fraud based upon an anonymous tip from a caller who was later identified as the appellant’s ex-girlfriend. This investigation was still in progress when the appellant left his ship on terminal leave on 17 September 1993. His discharge date was 20 October 1993, and his detaching endorsement reflected a separation hour of 1600 on that date. When the appellant left the ship on 17 September, the administrative clerk gave him his orders, the detaching endorsement, and his DD Form 214, which also stated the date of discharge as 20 October. .The appellant did not receive a final accounting of pay.
During the week of 11 October 1993, an NCIS agent informed the appellant’s executive officer of the investigation. The NCIS agent told the executive officer of the appellant’s possible “serious wrongdoing” and requested the appellant’s address and telephone number. On 18 October, the NCIS agent telephoned the appellant, who was still on terminal leave in San Francisco, told him of the investigation, and asked him to return to San Diego for questioning. NCIS briefed the executive officer of these developments. Because he knew he had done something wrong and wanted to deal with it, the appellant drove back to San Diego on his own. He reported to the NCIS office on 20 October and was advised of his rights at 1356. By 1545, NCIS began taking his written confession which the appellant signed at 1750. Following the interview, the appellant returned to his ship, where he was restricted, and appropriate documentation was completed to place him on legal hold beyond his discharge date. NCIS closed its investigation on 21 October 1993. The charge of *795 larceny was not preferred until the following February.

The Jurisdiction Issue

Both at trial and now on appeal, the appellant claims that the military had no jurisdiction to try him by court-martial because he had been given his discharge papers, and his discharge became effective at 1600, 20 October 1993, before any apprehension or preferral of charges took place.
The military judge, in denying the motion to dismiss for lack of jurisdiction at trial, made essential findings and conclusions of law. Appellate Ex. IX. His rationale to deny the motion was twofold: that the appellant’s enlistment had been validly extended before the discharge took effect, and that the Government had taken sufficient official action prior to ihe discharge date with a view towards prosecuting the accused to preserve military jurisdiction. He concluded that such action signalled the Government’s intent to “impose its legal processes” upon the appellant.
Rule for Courts-Martial [R.C.M.] 202(c) provides:
(1) In general. Court-martial jurisdiction attaches over a person when action with a view to trial of that person is taken. Once court-martial jurisdiction over a person attaches, such jurisdiction shall continue for all purposes of trial, sentence, and punishment, notwithstanding the expiration of that person’s term of service or other period in which that person was subject to the code or trial by court-martial. When jurisdiction attaches over a service-member on active duty, the service-member may be held on active duty over objection pending disposition of any offense for which held and shall remain subject to the code during the entire period.
(2) Procedure. Actions by which court-martial jurisdiction attaches include: apprehension; imposition of restraint, such as restriction, arrest, or confinement; and preferral of charges.
In United States v. Self, 13 M.J. 132, 137-38 (C.M.A.1982), the Court of Military Appeals, in considering a similar issue under R.C.M. 202(c)’s predecessor, paragraph lid of the 1969 Manual for Courts-Martial, held that investigative actions can fulfill the requirements of the rule even though no charges have been preferred. The Court stated that for military jurisdiction to exist, the investigation must have reached the point where the guilt of a particular suspect is particularly clear and it is likely that he will be prosecuted.
Similarly, this Court, in United States v. Benford, 27 M.J. 518 (N.M.C.M.R.1988), found that an investigator’s advisement to a suspect that he was going to take him to the office to question him about stolen property and his actual transportation to that office were sufficient to show official action with a view towards trial. The Court quoted the Court of Military Appeals in Self for the proposition that the list of examples in paragraph lid were not all-inclusive and that meaningful investigatory steps may suffice:
Any acts of military officials which authoritatively presage a court-martial, when viewed in the light of surrounding circumstances, are surely sufficient under paragraph lid of the Manual for Courts-Martial to authorize retention on active duty for purposes of trial. Even if a trial by court-martial does not eventuate for one reason or another, clairvoyant positiveness has never been required.
27 M.J. at 521, quoting Self, 13 M.J. at 138. See also United States v. Batchelder, 40 M.J. 655 (N.M.C.M.R.), aff'd, 41 M.J. 337 (1994).
Based on the above authority, we agree with the military judge that there were sufficient official actions by the Government prior to 20 October 1993 to illustrate that an investigation with a view towards trial was in progress. The investigation began in July and centered on the appellant as a prime suspect by early October. While the appellant was neither apprehended nor had charges preferred against him before 1600 on 20 October 1993, when the command had indicated he would be considered discharged, that is not determinative. The list contained in R.C.M. 202(c)(2) is not all-inclusive. Investigatory actions can suffice. Self, Ben-ford. In fact, we note that by concluding its investigation on 21 October, NCIS had, ex *796 cept for the appellant’s statement, not only initiated an investigation and focused on the appellant, but also had basically finished its investigation. Also, the magnitude of the appellant’s thefts clearly presaged a court-martial. Therefore, we find that jurisdiction over the appellant did not terminate on 20 October 1993, and that the first assignment of error lacks merit.

Providence of the Guilty Pleas

Next, the appellant argues that we should set aside his guilty pleas to larceny of the allowances because the military judge did not establish on the record the appellant’s intent to permanently deprive the Government of the use and benefit of the funds.
In accordance with United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969), the military judge advised the appellant of the elements of the offenses, including the element that the appellant obtained the allowances with the intent to permanently deprive the United States of them. Record at 57-58. The appellant answered affirmatively when asked if the elements, as given to him by the military judge, correctly described what he had done. Record at 58, 72. The appellant indicated that he received the allowances to which he was not entitled for about 3 years, and he used the money for his own purposes. Record at 68. At no point did he ever state that he may have intended to return the money.
We conclude from this record that the military judge obtained sufficient facts to establish that the appellant intended to keep the money permanently. We find no evidence in substantial conflict with his pleas that would justify overturning them. United States v. Vega, 39 M.J. 79 (C.M.A.1994); United States v. Prater, 32 M.J. 433 (C.M.A. 1991). Therefore, we hold that the guilty pleas were not improvident.

The Convening Authority’s Action on the Sentence

As stated above, the military judge sentenced the appellant to receive a dishonorable discharge, to be confined for 18 months, to forfeit all pay and allowances, and to be reduced to the lowest enlisted pay grade. The terms of the pretrial agreement did not affect this sentence. Approximately two months after the court-martial, trial defense counsel submitted a clemency petition in which she requested that the discharge be modified to a bad-conduct discharge and the confinement reduced from 18 to 12 months. The record discloses no specific reply to this petition.
About a month after submitting the first clemency petition, trial defense counsel forwarded a second. In this request, she pointed out that the appellant was in a non-pay status due to his confinement status beyond the date of his obligated service, and was not forfeiting any pay. On behalf of the appellant she requested that the convening authority “commute [the appellant’s] punishment as follows: reduce the dishonorable discharge to a bad-conduct discharge, fine him five thousand dollars ($5,000), and suspend six (6) months of the confinement awarded.”
The staff judge advocate noted in his supplemental recommendation that the convening authority could not increase the severity of the sentence, and that in certain cases a fine could be found more severe than forfeiture of pay. This was especially the case here where the appellant was not receiving any pay to forfeit. He advised that the process was not a mechanical one, and in light of the appellant’s request that the convening authority also mitigate the dishonorable discharge to a bad-conduct discharge and reduce the period of confinement by 6 months, that the request should be viewed as a type of package request for clemency. On balance, he concluded that the sentence proposed by the defense was not more severe than the one adjudged, particularly considering that the proposal came from the accused.
The convening authority eventually decided to grant the requested clemency. His action states:
[O]nly so much of the sentence as provides for bad conduct discharge, confinement at hard labor for 12 months, and reduction in rate to E-1, is approved, and, except for that part of the sentence extending to bad conduct discharge, will be executed. So *797 much of the sentence extending to total forfeitures is changed to a fine of $5,000.00. The sentence as changed is approved and, as excepted above will be executed.[2]
On appeal, the appellant now argues that the convening authority erred in changing the forfeiture of all pay and allowances to a fine of $5,000.00 because it increased the severity of the sentence.
Initially, we do not agree with the appellant’s characterization that the $5,000.00 fine was a substitute for only the forfeiture of all pay and allowances, even though the convening authority’s action phrased it that way. The actual intent of the parties, as discerned from the defense request and the staff judge advocate’s discussion in his supplemental recommendation, was that this was in reality a “package deal.” Part of the quid pro quo for the appellant in this case was the mitigation of the dishonorable discharge to a bad-conduct discharge and the reduction of the period of confinement from 18 to 12 months. In exchange for these considerations and for disapproval of the total forfeiture of pay and allowances, he proposed to pay the Government a fine. His first clemency petition was met with silence; the second added this “sweetener” to the Government. It appears to us that his real goal in this proposal was not to avoid the forfeiture of all pay and allowances, but to mitigate the discharge and to reduce his period of confinement. Therefore, we must view this issue in a broader context than the assignment of error states.
Rule for Courts-Martial 1107(d)(1) states:
The convening authority may for any or no reason disapprove a legal sentence in whole or in part, mitigate the sentence, and change a punishment to one of a different nature as long as the severity of the punishment is not increased. The convening or higher authority may not increase the punishment imposed by a court-martial The approval or disapproval shall be explicitly stated.
(Emphasis added). Article 60(c)(2), UCMJ; 10 U.S.C. § 860(c)(2). Any general court-martial may adjudge a fine in addition to forfeitures. R.C.M. 1003(b)(3). Neither the UCMJ nor the MCM limits the amount of a fine at a general court-martial. Such a fine is in the nature of a judgment, and when ordered executed, makes the accused immediately liable to the United States for the amount of money specified in the sentence. This punishment survives termination of entitlement to pay and can be collected by execution out of other property of the accused. United States v. Cuen, 9 C.M.A. 332, 26 C.M.R. 112, 1958 WL 3315 (1958). In Cuen, the Court stated that when all other factors are equal, a sentence that includes a fine is a more severe sentence than one in which a forfeiture has been adjudged. More recently, however, the Court has also stated that often all other factors are not equal, and that if a fine is less than or equal to the aggregate amount of the forfeiture of pay, it is not necessarily as severe a punishment as the forfeiture. United States v. Brown, 1 M.J. 465 (C.M.A.1976); United States v. Landry, 14 C.M.A. 553, 34 C.M.R. 333, 1964 WL 5023 (1964); see also United States v. Oldham, 9 M.J. 698 (N.C.M.R.1980). When an appellant asserts that a fine is a more' severe punishment in a particular case, he carries the burden to show why it is more severe. Oldham. There is no fixed or preexisting formula to determine an answer. A case-by-case evaluation rather than a mechanical process is required. Cf. United States v. Hodges, 22 M.J. 260 (C.M.A.1986)(analyzing commutation of punitive discharge into additional confinement); United States v. Carter, 42 M.J. 745 (A.F.Ct.Crim.App.1995) (upholding substitution of two additional years of confinement and additional forfeitures for 35 months for a bad-conduct discharge). But a convening authority’s power to commute a sentence is not absolute and cannot be used to increase the severity of a sentence. Waller v. Swift, 30 M.J. 139 (C.M.A.1990).
Also, courts will not generally consider collateral administrative consequences of a court-martial sentence when reviewing *798 the legality of the sentence. United States v. Schoemaker, 11 M.J. 849 (A.C.M.R.), petition dented, 12 M.J. 299 (C.M.A.1981). Therefore, we will not consider the fact that the appellant was not actually forfeiting any pay or allowances while in post-trial confinement.
In light of the above, we hold that the sentence approved by the convening authority (bad-conduct discharge, confinement for 12 months, reduction to E-l and a fine of $5,000.00) was not more severe than the adjudged sentence (dishonorable discharge, confinement for 18 months, reduction to E-1 and forfeiture of all pay and allowances). A fine was clearly an authorized punishment in this general court-martial. The convening authority had the power to change the nature of the adjudged sentence, as long as the overall severity of the sentence was not increased. The mitigation of the discharge and the 6-month reduction in confinement more than compensated for any possible increase in the sentence that may have been involved in the modification of the forfeiture into a fine. Under the circumstances present in this case, however, the amount of the fine was nearly the same as the amount of pay that the appellant would have forfeited, not considering administrative consequences.[3]
Even if we were not convinced that the approved sentence was not more severe than the adjudged sentence, it was the appellant himself who proposed the sentence that was finally approved. He is the one who brought up the fine as a possible punishment in exchange for a reduction of his confinement, elimination of the forfeitures and a mitigation of his discharge. This indicates to us that not only did he not consider the sentence proposed in the clemency petition to be more severe, because we would not expect service-members convicted by court-martial to request that their sentences be increased in such petitions, but also that the change was made with his express awareness and acquiescence. His expressed willingness to accept the fine may waive any limitation, other than jurisdiction, that otherwise would be applicable. Cf. Hodges.
One aspect of the action in this case which troubles us is the appearance it leaves that an appellant who has been convicted of stealing over $18,000.00 from the United States Government would negotiate an early release from confinement in exchange for payment of a fine. In other words, it appears as though the appellant “bought” his way out of confinement, possibly with his ill-gotten gains. Troubling as this may seem, we believe it was within the province and discretion of the convening authority to agree to such an arrangement, considering all of the circumstances of the case. R.C.M. 1107(d) allows him to change the nature of the punishment as long as the severity of it is not increased. The convening authority did not violate the rule in this case.

Decision

Accordingly, the findings and sentence, as approved on review below, are affirmed.
Senior Judge KEATING and Judge CLARK concur.

. I. THE MILITARY JUDGE ERRED IN DENYING APPELLANT’S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION BECAUSE APPELLANT HAD BEEN DELIVERED A VALID DISCHARGE CERTIFICATE WHICH BECAME EFFECTIVE PRIOR TO HIS RETURN TO MILITARY JURISDICTION. (CITATION OMITTED.)
II. THE MILITARY JUDGE ERRED BY ACCEPTING APPELLANT’S PLEAS OF GUILTY TO LARCENY IN THAT HIS PROVIDENCE INQUIRY FAILED TO ESTABLISH THAT APPELLANT INTENDED TO PERMANENTLY DEPRIVE THE UNITED STATES GOVERNMENT OF THE USE AND BENEFIT OF THE FUNDS ALLEGED TO HAVE BEEN STOLEN. (CITATION OMITTED.)
III. THE CONVENING AUTHORITY ERRED IN CHANGING APPELLANT’S SENTENCE FROM TOTAL FORFEITURES TO A FINE OF $5000.00 BECAUSE THAT INCREASED THE SEVERITY OF APPELLANT'S SENTENCE.

. Based on an overall reading of this action, we have concluded that the forfeiture of all pay and allowances was part of the approved sentence.

. The period of forfeitures (from the time of the convening authority’s action in October 1994 to the time of the appellant’s release from confinement and departure on appellate leave in June 1995) would have been about 7 months. With the basic pay of an E-1 at $832.00 per month in 1994, this would make the total amount of forfeitures over $5,800.00.