**UNITED STATES**

v.

**Nicholas A. HARMON, Private (E–1), U.S. Marine Corps.**

**NMCCA 200300683.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 18 March 2002.

Decided 14 Dec. 2004.

Lt Robert E. Salyer, JAGC, USNR, Appellate Defense Counsel.

Lt Christopher J. Hajec, JAGC, USNR, Appellate Government Counsel.

Before PRICE, Senior Judge, SUSZAN, and HARRIS, Appellate Military Judges.

SUSZAN, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of attempted kidnapping, attempted larceny, conspiracy to commit armed robbery, and conspiracy to commit kidnapping, in violation of Articles 80 and 81, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 881. The appellant was sentenced to a dishonorable discharge, confinement for 10 years, and forfeiture of all pay and allowances. The convening authority approved the sentence as adjudged and, except for the dishonorable discharge, ordered it executed. Pursuant to a pretrial agreement, the convening authority suspended all confinement in excess of 7 years for a period of 7 years from the date of his action.

We have examined the record of trial, the appellant's sole assignment of error, the Government's response, the appellant's reply, and the excellent oral argument of counsel. After careful consideration, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### In Personam Jurisdiction

The appellant contends that the court-martial lacked *in personam* jurisdiction because the Marine Corps discharged him prior to his conviction. We disagree.

#### 1. Factual Background

The appellant enlisted in the Marine Corps and began his period of active service on 21 June 1999; his final duty assignment was to the 2d Medical Battalion, 2d Force Service Support Group (2d FSSG), at Marine Corps Base, Camp Lejeune, North Carolina. In the spring of 2001, the appellant's commanding officer notified him that he was recommended for an administrative separation from the Marine Corps for misconduct.

On 3 May 2001, the Commander, 2d FSSG (acting as separation authority), directed that the appellant be administratively separated from the Marine Corps within ten working days, meaning that the appellant would be discharged no later than 17 May 2001. Between 9 and 16 May 2001, the appellant completed the administrative clearing process necessary for his separation from the Marine Corps and provided the information necessary for his final accounting of pay. The form he completed was NAVMAC Form 11060. The effective date of separation was reflected as 17 May 2001. Under the "Pay Information" section of the form the notation 2359 2001 05 17, is typed after the unchecked block on the form which reads "LEAVE AWAITING SEPARATION FROM (TIME AND DATE) TO (TIME AND DATE) 2359/2001 05 17." The only block checked in that section of the form reads "OTHER **SNM requests final payment be made by EFT.**"

Prior to 16 May 2001, the appellant entered into an agreement with Private (Pvt) John Luke Piazza, U.S. Marine Corps, to rob Hospitalman (HN) Eric L. Madden, U.S. Navy. Around 0500, 17 May 2001, the appellant met with Pvt Piazza to carry out the plan. About 0520 they hid near the barracks parking lot. The appellant was armed with a BB gun and pulled a mask over his face waiting for HN Madden. Pvt Piazza remained off to the side. When the appellant saw HN Madden in the parking lot, he ap-

proached HN Madden and, holding the BB gun against HN Madden's back, told him to hand over the keys to his truck and not to say a word. HN Madden pulled his keys from his pocket and also pulled out a knife. The appellant was cut on his left hand and dropped the BB gun. HN Madden resisted and fought off the appellant. Pvt Piazza came up, attempted to help the appellant, but then merely separated HN Madden from the appellant. The appellant ran away and later went to Pvt Piazza's barracks room.

About 0545, 17 May 2001, HN Madden reported the incident to the military police and gave a description of the appellant. At 0815, 17 May 2001, Criminal Investigator Brian L. Smith, Criminal Investigation Division (CID), met with HN Madden. HN Madden identified the appellant, by name and barracks address, as his suspected attacker. After interviewing HN Madden, Investigator Smith went to retrieve the gun and inspect the crime scene.

At approximately 0730, 17 May 2001, the appellant reported to the separations clerk at the Group Consolidated Administrative Center (GCAC). The appellant was told to return at approximately 0900, which he did. When he returned, he received his DD Form 214 from the separations clerk. The separations clerk was authorized to deliver the discharge certificate to the appellant at 0900. At the time the appellant received his discharge certificate, there was no further administrative clearing or accounting of pay that he needed to accomplish to be discharged.

After receiving his discharge certificate, the appellant purchased a bus ticket to leave the area. The appellant briefly returned to the base and then went to a friend's house in Jacksonville, North Carolina, to wait until it was time to return to the bus station.

At approximately 1020, 17 May 2001, Investigator Smith notified the appellant's command that he was a possible suspect in a criminal investigation. Soon thereafter, the appellant's command notified the GCAC to place the appellant on legal hold. On 17 May 2001, the appellant was placed on legal hold and the Commander, 2d FSSG, revoked his administrative discharge.

By approximately 1500, the appellant's commanding officer, issued a DD Form 553 for his apprehension. At approximately 1700, CID agents and local police apprehended the appellant at his friend's house in Jacksonville. The appellant was then placed in pretrial confinement.

At trial, the trial defense counsel moved to dismiss the charges and specifications based on lack of personal jurisdiction. The military judge denied the motion issuing a finding of fact that the NAVMAC Form 11060 (separation order) listed the effective time and date of separation as 2359, 17 May 2001, and concluding that this was evidence of the discharge authority's intent for the appellant to remain on active duty until the discharge became effective at midnight of 17 May 2001.

2. Discussion of the Applicable Law

For a court-martial to have jurisdiction, "[t]he accused must be a person subject to court-martial jurisdiction." RULE FOR COURTS-MARTIAL 201(b)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). "Courts-martial may try any person when authorized to do so under the code." R.C.M. 202(a). Persons subject to the UCMJ include members of a regular component of the armed forces. Art. 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1). "Jurisdiction of a court-martial depends solely on the accused's status as a member of the military." *United States v. Williams*, 51 M.J. 592, 594 (N.M.Ct.Crim.App.1999)(citing *Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987)), *aff'd*, 53 M.J. 316 (C.A.A.F.2000). Ordinarily the delivery of a valid discharge certificate serves to terminate court-martial jurisdiction. R.C.M. 202(a), Discussion. However, "[c]ourt-martial jurisdiction attaches over a person when action with a view to trial of that person is taken." R.C.M. 202(c)(1). Once court-martial jurisdiction over a person attaches, such jurisdiction continues for all purposes of trial, sentence, and punishment. *Id.*

"Actions by which court-martial jurisdiction attaches include: apprehension; imposition of restraint, such as restriction, arrest, or confinement; and preferral of charges." R.C.M. 202(c)(2). It is well settled that the

list contained in R.C.M. 202(c)(2) and its predecessor, paragraph 11d of the 1969 Manual for Courts–Martial, is illustrative and not all-inclusive. *United States v. Self,* 13 M.J. 132, 138 (C.M.A.1982); *United States v. Wheeley,* 6 M.J. 220, 222 (C.M.A.1979); *United States v. Benford,* 27 M.J. 518, 520–21 (N.M.C.M.R.1988). "Any acts of military officials which authoritatively presage a court-martial, when viewed in the light of surrounding circumstances, are surely sufficient ... to authorize retention on active duty for purposes of trial." *Self,* 13 M.J. at 138.

This court has previously held that investigatory action constitutes sufficient official action to preserve military jurisdiction. *United States v. Lee,* 43 M.J. 794, 797 (N.M.Ct.Crim.App.1995). In *Lee* the Naval Criminal Investigative Service (NCIS) opened an investigation involving theft of military allowances on 7 July 1993. Mess Management Specialist Third Class (MS3) Lee, the subject of the investigation, left his ship in San Diego for terminal leave in San Francisco on 17 September 1993. MS3 Lee was given a detaching endorsement on his orders reflecting a separation hour of 1600 on 20 October 1993. During the week of 11 October 1993, MS3 Lee's command was informed of the NCIS investigation. On 18 October 1993, an NCIS agent telephoned MS3 Lee and asked him to return to San Diego for questioning. MS3 Lee reported to NCIS on 20 October 1993 and questioning concluded at 1750. Sometime after 1750 MS3 Lee returned to his ship where he was placed on restriction. Appropriate documentation to place MS3 Lee on legal hold was not completed until after the separation hour of 1600 on that date. The court in *Lee* held that the Government's investigatory action prior to discharge, coupled with the serious nature of the offenses, was sufficient to preserve jurisdiction despite an otherwise valid discharge.

█ In the appellant's case, the Government's criminal investigation was initiated between 0545 and 0658, 17 May 2001, from the point at which HN Madden reported the attempted robbery and the Government investigator assigned to the case began his investigation. The investigation centered on the appellant as the prime suspect by 0815,

after he was identified by name and barracks address to the Government investigator by HN Madden. In other words, by 0815 on 17 May 2001 military officials had undertaken investigatory action focused on the appellant with a view toward trial. Further, the magnitude of the offenses under investigation clearly presaged a general court-martial. Because the investigation of serious violations of the UCMJ was initiated and focused on the appellant before delivery of his discharge, we find that jurisdiction over the appellant attached prior to 0900 on 17 May 2001.

█ We are mindful that the authority to retain an individual on active duty for trial by court-martial is "discretionary and not self-executing." *Smith v. Vanderbush,* 47 M.J. 56, 58 (C.A.A.F.1997)(citing R.C.M. 202, Discussion). The fact that court-martial jurisdiction has attached in no way prevents a command from exercising its discretion to issue a lawful discharge, effectively terminating jurisdiction. *Id.* at 60. In *Vanderbush,* our superior court held that the Army lost court-martial jurisdiction over an individual when it lawfully discharged him after court-martial preferral and arraignment but prior to adjudication of findings. *Id.* at 59–61. Key to the *Vanderbush* decision was the fact that the very same commander who preferred the charges against Sergeant Vanderbush was notified of his pending discharge, yet took no action to prevent it. *Id.* at 57.

█ The Marine Corps was culpable of no such inaction in the appellant's case. Rather, the discharge certificate was delivered to the appellant under the erroneous belief that nothing had changed since his separation was approved. The fact that the appellant's chain of command was not aware of the nascent investigation at the time the discharge certificate was delivered, and that it took immediate action to revoke that discharge upon learning of the investigation, clearly indicates that the Marine Corps delivered the discharge certificate to the appellant without an informed exercise of discretion. We therefore find that jurisdiction over the

appellant did not terminate upon delivery of his discharge certificate.

The appellant contends that the military judge erred by concluding that it was the intent of the discharge authority for the appellant's discharge not to become effective until 2359, postponing the discharge beyond 0900, the time at which the appellant received delivery of his DD Form 214. As we find that jurisdiction attached prior to 0900, 17 May 2001, we need not review the military judge's determination that the effective time of separation was 2359.

## Conclusion

Accordingly, the findings and the sentence, as approved by the convening authority, are affirmed.

Senior Judge PRICE and Judge HARRIS concur.