ERDMANN, Judge
(dissenting):
The majority opinion finds that Harmon’s status as an active duty member of the Marine Corps did not terminate until 2359 on May 17, 2001 and that his discharge was properly revoked before that time. Because I find that Harmon’s discharge was validly completed at 0900,1 respectfully dissent.
Harmon was discharged before the end of his term of service and this court has held that three conditions must be met before an early discharge is effective: (1) nonfraudu-lent and authorized delivery of a valid discharge certificate, (2) a final accounting of pay, and (3) completion of the clearing process required by the service’s regulations. United States v. King, 27 M.J. 327, 329 (C.M.A.1989); see also United States v. Bat-chelder, 41 M.J. 337, 339 (C.A.A.F.1994) (holding that early discharge was not valid because the separations clerk was not following the instructed procedures); Wickham v. Hall, 12 M.J. 145, 150 (C.M.A.1981) (holding that separation from military service procured by fraudulent means is not a valid separation).
There is no dispute that Harmon received a valid discharge certificate—an original (Copy 1) of his “Certificate Of Release Or Discharge From Active Duty” (DD Form 214)—at 0900. The facts also establish that there was no further administrative clearing or accounting of pay to be performed when Harmon picked up his discharge certificate. Thus, the question is whether there was a nonfraudulent and authorized delivery of the DD Form 214.
There has been no assertion at any time that Harmon acted to fraudulently “pro-curen his own separation from the armed forces by knowingly false representation or deliberate concealment as to his eligibility for that separation.” Article 83(2), Uniform Code of Military Justice, 10 U.S.C. 883(2) (2000). In fact, there is no dispute that Harmon was eligible for separation as his administrative discharge had been approved and processed. Nor is there any allegation that the clerk who delivered the DD Form 214 to Harmon was working outside his authority.
The majority concludes, however, that Harmon’s DD Form 214 did not take effect when it was physically transferred to him at 0900 because the command expressed a clear intent to keep Harmon on active duty until 2359. In reaching this conclusion the majority relies on an entry in Harmon’s “Separation/Travel Pay Certificate” (NAVMC 11060 Form) as evidence of the command’s intent to extend the effective date of Harmon’s discharge and on this court’s holding in Bat-chelder.
NAVMC 11060 Form contains a section entitled “Pay Information”. That section has *104 a number of blanks that are to be completed by the command when a person is discharged. One such blank reads as follows: “Leave Awaiting Separation From (Time And Date) _ To (Time And Date) _”. The official who completed the form did not make an entry in the first blank but in the second blank inserted “2359/2001 05 17”. This entry is cited by the majority as evidence of the command’s intent to discharge Harmon at 2359 on May 17, 2001.
The entry relied upon by the majority appears to be an entry related to leave that simply indicates the time through which Harmon would be charged leave rather than the effective date of the discharge. This entry on the NAVMC 11060 Form would alert finance authorities to deduct this leave from a Marine’s leave balance before determining any separation pay for accrued leave. It appears, however, that Harmon took no leave and this entry is therefore meaningless.
A separate blank on the form does reference the “Effective Date Of Separation From ACDU”[1] and contains the following entry: “2001 05 17”. This blank does not ask for the effective “time” of discharge, which is consistent with a Marine Corps regulation in effect at that time that provided that “[a] discharge or separation takes effect upon delivery of a valid discharge or separation document.” Marine Corps Separation and Retirement Manual (MARCORSEPMAN), Marine Corps Order (MCO) P1900.16E, ch. 1, para. 1007(1) at 1-22 (Aug. 18,1995).[2] The regulation clearly dictates the effective time of the discharge as the time of delivery, which in this case was 0900. Even if the entry in the pay section of the form did evidence the local commander’s intent to extend the effective time of Harmon’s discharge, the regulation does not authorize individual commanders to alter the effective time of a discharge. Id.; see also United States v. Wheeler, 27 C.M.R. 981, 989, 1959 WL 3708 (A.F.B.R.1959) (“Regulations issued by the military service on matters within their authority have the force of law if not in conflict with the Constitution or Congressional enactments.”).
The majority also relies on Batckelder, where this court held that a discharge did not go into effect when a servicemember received his DD Form 214 because (1) his orders and discharge package clearly identified the discharge time as 2400, and (2) the clerk who delivered the paperwork to Bat-chelder at 1400 was breaking the command’s rules with regard to how discharge paperwork should be handled. 41 M.J. at 339. Here the form does not clearly identify the discharge time, the Marine Corps regulation specified that the discharge was effective upon the delivery of the DD Form 214 and there is no allegation that the clerk who issued the DD Form 214 to Harmon was working outside of his authority.
I also do not agree with the alternative argument presented by the Government—■ that the Navy-Marine Corps Court of Criminal Appeals was correct in its conclusion that under Rule for Courts-Martial (R.C.M.) 202(c)(2), court-martial jurisdiction attached before 0900 because action with a view to trial was taken prior to the delivery of the discharge certificate.[3] United States v. Harmon, 60 M.J. 776, 779 (N.M.Ct.Crim.App.2004). Examples of actions with a view to a trial include “apprehension; imposition of restraint, such as restriction, arrest, or confinement; and preferral of charges.” R.C.M. *105 202(c)(2). We have also held that R.C.M. 202(c)(2) does not provide an exhaustive list and that “other affirmative action can also be taken “with a view to trial.’ ” United States v. Self, 13 M.J. 132, 138 (C.M.A.1982). We have further explained that “[a]ny acts of military officials which authoritatively presage a court-martial” can constitute actions that trigger the attachment of jurisdiction. Id.
In Self we concluded that sufficient actions had been taken to create jurisdiction where, prior to receiving his discharge, the accused was identified as a suspect, summoned to the Army Criminal Investigation Division (CID) office, informed of the offenses for which he was being investigated, informed of his rights and then interviewed. Id. Here the Government argues that court-martial jurisdiction had attached because “the criminal investigation into the crimes committed upon HN Madden had reach the point where the guilt of Appellant seemed particularly clear.”
Sometime between 0815 and 1015 Harmon became a possible suspect based on the victim’s statement to the CID that “the suspect may be a PFC Harmon”. The record does not disclose whether this occurred prior to 0900. At approximately 1020 CID notified Harmon’s command that “he was a possible suspect in the investigation” (emphasis added). At 1500 a “Deserter/Absentee Wanted by the Armed Forces” (DD Form 553) was issued for Harmon’s arrest and he was apprehended at approximately 1700. At most, these facts support a finding that the victim may have identified Harmon as a possible suspect prior to 0900. They do not support a conclusion that the acts of “military officials ... authoritatively presage[d] a court-martial” prior to 0900. Self 13 M.J. at 138.
Harmon was validly discharged at 0900 and there was no in personam jurisdiction over him from that point forward. For these reasons, I would reverse the decision of the lower court, set aside the findings and sentence and dismiss all charges.

. "ACDU” is a Navy/Marine Corps abbreviation for “active duty”.

. As noted by the majority, this regulation was amended in July 2003 to specify 2359 as the effective time of all discharges. See MARCOR-SEPMAN, MCO P1900.16F, ch. 1, para. 1007(1), at 1-20 (July 18, 2003).

. In Smith v. Vanderbush this court made it clear that once court-martial jurisdiction attaches the command may choose to take steps to defer an upcoming discharge and continue the accused's active service, but such action does not occur automatically. 47 M.J. 56, 58 (C.A.A.F.1997). The Navy-Marine Corps court recognized this precedent, but added a qualification to the Van-derbush requirements—that the command be fully informed about the nature of the investigation at the time the discharge certificate is delivered. United States v. Harmon, 60 M.J. 776, 779-80 (N.M.Ct.Crim.App.2004). This qualification is not supported by Vanderbush or other precedent of this court.