UNITED STATES, Appellee

v

JOSEPH S. KRASKOUSKAS, Private E–2,
U. S. Army, Appellant

9 USCMA 607, 26 CMR 387

No. 10,371

Decided September 19, 1958

*Captain John F. Christensen* argued the cause for Appellant, Accused.

*First Lieutenant Chester F. Relyea* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee, Major Thomas J. Nichols,* and *First Lieutenant Thomas M. Lofton.*

## Opinion of the Court

HOMER FERGUSON, Judge:

Private Joseph S. Kraskouskas was charged with the violation of several punitive Articles of the Uniform Code of Military Justice. The convening authority appointed First Lieutenant William J. Cooney, a qualified attorney who was an officer in the Judge Advocate General's Corps, to assist him in the preparation of his defense. At the same time the accused requested and obtained the services of Captain Clyde M. Turner as individual counsel. Together these officers collaborated in preparing the case for trial. When the case came on for hearing before a general court-martial convened at Seoul, Korea, both the appointed and individual counsel were present. Appointed counsel announced in court that the accused would be defended by individual counsel. The latter, in answer to an inquiry by the trial counsel concerning his legal qualifications, stated that he was neither certified by The Judge Advocate General of the Army nor qualified in accordance with Article 27(b) of the Code, supra, 10 USC § 827.[1] He informed the court, however, that the accused "elects to be defended by individual counsel and we request that the regularly appointed defense counsel be excused." The following colloquy then occurred between trial counsel, individual counsel, appointed defense counsel, the law officer, and the accused:

"TC: Captain Turner, are you a graduate of an accredited law school?

"IC: I am not.

"TC: Are you a member of any bar of any state of the United States or the District of Columbia?

"IC: I am not.

"DC: With the permission of the law officer, I request to be excused.

"LO: Do you understand, Private Kraskouskas, that if you desire you could retain First Lieutenant Cooney to also represent you?

"ACCUSED: Yes, sir.

"LO: Do you desire to excuse Lieutenant Cooney?

"ACCUSED: Yes, sir.

"LO: Lieutenant Cooney may be excused."

The entire defense was thereafter conducted by Captain Turner.

In the course of representing the accused at trial, Captain Turner, among other things, exercised a challenge against a court member, offered several motions for appropriate relief with legal argument in support thereof,

---

[1] "Art. 27. Detail of trial counsel and defense counsel

. . . . . .

"(b) Trial counsel or defense counsel detailed for a general court-martial—

(1) must be a judge advocate of the Army or the Air Force, or a law specialist of the Navy or Coast Guard, who is a graduate of an accredited law school or is a member of the bar of a Federal court or of the highest court of a State; or must be a member of the bar of a Federal court or of the highest court of a State; and

(2) must be certified as competent to perform such duties by the Judge Advocate General of the armed force of which he is a member."

moved to dismiss one specification on the grounds of failure to allege an offense and another specification on the grounds of unreasonable multiplication of charges, made numerous and timely objections to trial counsel's examination of the witnesses and to the introduction of evidence, and made closing argument on findings and requested instructions favorable to the accused. The court-martial found the accused guilty of two offenses while acquitting him of two others. At the conclusion of the trial Captain Turner forwarded to The Judge Advocate General of the Army a brief setting forth numerous legal errors as grounds for reversal. Before this Court several issues are presented. The major assault on this conviction is that the law officer erred to the substantial prejudice of the accused "in allowing unqualified 'counsel' to represent the accused."

The Government presents a twofold argument to refute this contention. First, it urges that Congress never intended to limit an accused's selection of individual military counsel to lawyers. Secondly, it insists that inasmuch as the accused expressly waived his right to be represented by a qualified lawyer the law officer did not err in permitting a nonlawyer to conduct the defense. The basic issue as we view it is simply whether or not a nonlawyer should be permitted to practice before a general court-martial.

Prior to the enactment of the Uniform Code of Military Justice it was not uncommon for an accused before a general court-martial to be represented by a nonlawyer. With the advent of the Code, however, many remedial changes in the administration of military justice were inaugurated. One of the most important of these changes required the appointment of qualified lawyers to represent both the prosecution and the defense in trials before general court-martial. Congress, in Article 38(b) of the Code, supra, 10 USC § 838, recognized three sources from which defense counsel could be drawn. The most frequently used source is that from which the convening authority appoints counsel "pursuant to Article 27." This latter Ar-ticle sets forth the qualifications which appointed counsel must possess. In substance it provides that counsel must be a lawyer who has been admitted to practice before the highest court of a state or is a member of the bar of a Federal court. In addition, counsel must also be "certified as competent" by The Judge Advocate General of the particular service to perform the duties of defense counsel. Article 27(b)(2). Article 38(b) also permits an accused to be represented "by civilian counsel if provided by him." Counsel so provided must be a lawyer who is a member in good standing of a recognized bar. Other than this the Code imposes no special qualifications upon a civilian attorney's right to practice before a court-martial. Cf. United States v Nichols, 8 USCMA 119, 23 CMR 343. The most infrequently used source from which general courts-martial defense counsel are drawn—and that presented in the case at bar—is by the accused's selection of unqualified "military counsel."

Of the three categories discussed above, it is clear that "counsel duly appointed pursuant to Article 27" and "civilian counsel" provided by an accused must be qualified attorneys authorized by some recognized licensing authority to engage in the practice of law. The precise issue presented therefore is whether "military counsel" selected by an accused pursuant to Article 38(b) must likewise be a lawyer. Appellate defense counsel forcefully contends that only licensed attorneys who are members of the bar should be permitted to practice before a general court-martial. In support of his contention he argues that the basic policy reasons which underlie the prohibitions against the unauthorized practice of law, i.e., to protect the administration of justice against unethical practitioners and to safeguard an accused against incompetence, are as fully applicable in courts-martial as in civilian courts. There is merit in counsel's argument.

Without regard to the situation which existed prior to the Code, we believe that the day in which the nonlawyer may practice law before a general court-martial must draw to an end.

**609**

We remain unconvinced that Congress ever intended to permit one who has been accused of an offense serious enough to warrant referral to a general court-martial to be represented by a nonlawyer before that tribunal. Lawyers have always been considered officers of the court. A layman could not be considered such. The code of ethics would not apply to the nonlawyer. A lawyer is held to a high standard of professional capacity and his decisions on law are binding on his client. It is clear that Congress in enacting the Code sought to eliminate many of the objectionable practices which had existed prior thereto—not the least of which was an accused's representation by one unskilled in the practice of law. It is inconceivable that Congress would, on the one hand, prescribe exacting legal qualifications for appointed counsel, while on the other, permit an accused by his own selection to be represented by a nonlawyer. The stakes involved in a general court-martial are too high and the price paid for incompetence and lack of professional ability is too dear to permit an accused's life and liberty to rest in the hands of one untrained in the law. As the Supreme Court of the United States said in Johnson v Zerbst, 304 US 458, 463, 58 S Ct 1019, 1022, 82 L ed 1461, 1466, "Even the intelligent and educated layman has small and sometimes no skill in the science of law."

We are not unmindful that in the past those representing the adversary interest before a military court-martial were often nonlawyers who performed very creditable service on behalf of their clients. Nevertheless, the obvious truth—with which none can quarrel—is that one untrained in the law is seriously handicapped by the lack of professional skill and legal ability which is so necessary in adversary proceedings, especially involving criminal matters. To the nonlawyer rules of evidence mean little and instructions are but unimportant technicalities. To the lawyer, however, they are tools which oftentimes spell the difference between success and failure.

The constitutional right to effective assistance of counsel is not concerned with merely a procedural requirement but also demands a professional and requisite standard of skill. A fair standard of professional competence must be a necessary condition precedent with the professional undertaking of the defense of a person on trial for a crime. United States v Horne, 9 USCMA 601, 26 CMR 381.

We conclude, therefore, that in order to promote the best interests of military justice, it is imperative that only qualified lawyers be permitted to practice before a general court-martial.

Our holding is not to be construed in any manner as prohibiting an accused from insisting upon the right to conduct his own defense should he so desire without the assistance of counsel. As always, an accused can waive his right to counsel "if he knows what he is doing and his choice is made with eyes open." Adams v United States, 317 US 269, 279, 63 S Ct 236, 242, 87 L ed 268, 275. All we now hold is that an accused, even at his own insistence, may not be permitted lay representation before a general court-martial. Of course this does not in any manner infringe upon his right to consult with a nonlawyer, or even to have a nonlawyer present at trial and seated at the counsel table. However, concerning the actual trial proceedings before the general court-martial itself, only lawyers may now participate.

Accordingly, we direct that the practice of permitting nonlawyers to represent persons on trial before general courts-martial be completely discontinued. In view of our holding it is unnecessary to consider the remaining issues raised. The decision of the board of review is reversed. A rehearing may be ordered limited to those offenses of which the accused was convicted. In view of the foregoing action, the petition for new trial is denied.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

Ever since the right to counsel became part of military law in the United States, it has been permissible for officers of the line or other services to

610

represent individuals who were on trial in military courts. That practice has been so firmly established that it is unnecessary for me to do more than to mention its existence. I, therefore, start with the premise that, in order to justify the Court in its present holding, there must be some Congressional enactment which shows clearly that Congress intended to bar anyone except a certified lawyer from representing an accused before a general court-martial. I find nothing in any prior legislation or in the present Code to that effect, either expressly or impliedly. Therefore, I hope to show that the Court's opinion is no more than a piece of judicial legislation which should have been given prospective application and not used as a basis for a reversal of this conviction.

Article 27, Uniform Code of Military Justice, 10 USC § 827, provides as follows:

"(a) For each general and special court-martial the authority convening the court shall detail trial counsel and defense counsel, and such assistants as he considers appropriate. . . .

"(b) Trial counsel or defense counsel detailed for a general court-martial—

(1) must be a judge advocate of the Army or the Air Force, or a law specialist of the Navy or Coast Guard, who is a graduate of an accredited law school or is a member of the bar of a Federal court or of the highest court of a State; or must be a member of the bar of a Federal court or of the highest court of a State; and

(2) must be certified as competent to perform such duties by the Judge Advocate General of the armed force of which he is a member."

That Article requires the convening authority to appoint a qualified lawyer to act and, in compliance with its mandate, the officer convening the court appointed a certified defense counsel. Therefore, in this instance, there can be no question about the fact that jurisdictional and statutory requirements were met. It is to be noted, however, that the quoted Article is silent about the qualifications of individually selected counsel and the difficulty in this instance arose because before pleading the accused exercised his right under Article 38(b), Uniform Code of Military Justice, 10 USC § 838, to have counsel of his own selection represent him.

Paragraph 61f of the Manual for Courts-Martial, United States, 1951, provides that, "in a trial by general court-martial, should the accused be represented by counsel of his own selection who is not qualified to act as counsel before a general court-martial · [as was the case here], the accused should be advised that he is entitled to be represented by counsel who is qualified to act as counsel before a general court-martial." That provision would be futile if all persons had to be qualified lawyers, but for the present I will not develop the point for the record shows that the law officer complied with this requirement and the accused was put on notice of his right to retain his duly appointed lawyer. A subsequent provision of paragraph 61f, which is in elaboration of Article 38(b), supra, states that, regardless of the legal qualifications of individual counsel, the duly appointed defense counsel shall, if the accused so desires, act as his associate counsel; otherwise, he shall be excused. Here the accused expressly declined the service of the qualified lawyer and specifically requested that he be excused, and an order to that effect was issued. From all that has been stated, it is apparent to me that the law officer's actions were in accordance with the direction of the Manual, supra.

While many provisions of the Manual have been written out of military law by decisions of the Court, I contend for the principle that, if they are not contrary to the Code and they are within the power of the President to promulgate, they are binding on us. As will hereinafter appear, the above-mentioned Manual provisions are not inconsistent with the Code, and Article 36 of the latter gives to the President the

power to prescribe the procedure, rules, and regulations applicable to courts-martial. Certainly the procedure to be followed when an accused rejects his duly appointed defense counsel falls within the sweep of that Article and, while it might be preferable for this Court to have the rule-making power for all military courts, Congress has decreed otherwise.

From what I have previously stated, it is fairly well established that the opinion of the Court is contrary to the provisions of the Manual, so I now look to the Code to ascertain whether it conflicts with the Manual or if it can be construed reasonably to support my associates. I find no conflict, for Article 38, which, insofar as relevant to this decision, is identical with paragraph 61*f* of the Manual, provides:

"(b) The accused has the right to be represented in his defense before a general or special court-martial by civilian counsel if provided by him, or by military counsel of his own selection if reasonably available, or by the defense counsel detailed under section 827 of this title (article 27). Should the accused have counsel of his own selection, the defense counsel, and assistant defense counsel, if any, who were detailed, shall, if the accused so desires, act as his associate counsel; otherwise they shall be excused by the president of the court."

That leaves for determination the question as to whether the Code upholds the position taken by the Court. Nowhere therein is it provided that individual counsel must be a qualified lawyer, and Congress clearly envisioned that an accused could stand trial without a legally qualified representative, for the last above-quoted Article specifically provides that those who have the statutory qualifications may be excused. Under any reasonable construction, that leaves the accused with the alternatives of being defended by legally qualified counsel or selecting any defender whom he chooses, without regard to the latter's qualifications. While courts should not be concerned with the wisdom of legislation, there is a

good reason for permitting him to do so. Courts-martial may be required to convene in faraway places where qualified lawyers may be at a premium and civilian counsel not available. Absent the availability of nonlawyers and without the benefits of bail, confinement might be prolonged. Moreover, an accused may have much more confidence in an officer he knows personally than he does in Government appointed counsel. In addition, he may prefer an officer not chosen by the commander who orders him tried. Therefore, to say he does not have the right to select non-lawyers as his counsel is to misconstrue the Code, narrow his choice to a chosen few, and deny him a right guaranteed by Article 38.

To complete my discussion, I should mention the inherent right of a court to protect itself by prescribing the qualifications of the persons who may appear before it. We have done so for those who appear before this Court because Article 67 grants us the power to prescribe our own rules. However, unless the President has been granted the power, the Code is silent about courts-martial, and where we obtain the authority to make rules for them I do not know. Congress did not see fit to give us the power to regulate the practice before boards of review as that authority is vested in the Judge Advocates General. Article 66, Uniform Code of Military Justice, 10 USC § 866. Therefore, I find it doubtful reasoning to say we have the inherent power to set the standards for courts-martial. While over the years Congress has traveled toward blending the civilian principles with those of the military, I find no justification for the belief that it empowered us to adopt civilian standards on admissions to practice in all military courts. The Constitutional provision which guarantees a person the right to be represented by counsel does not support the Court's view that only qualified lawyers may appear, for it was enacted to abrogate the common-law practice under which persons accused of felonies were denied the right to have anyone appear for them. Powell v Alabama, 287 US 45, 53 S Ct 55, 77 L ed 158 (1932). In military courts,

the word "counsel" has always been interpreted to mean a selected or requested advisor without regard to his legal qualifications. Most certainly it has never been considered that the selection of a nonlawyer by an accused being tried in a military court was a violation of the Sixth Amendment or contrary to military law for, up until the Elston Act of 1948, the right to qualified appointed counsel had not been guaranteed to servicemen. See Romero v Squier, 133 F2d 528 (CA 9th Cir) (1943), cert den 318 US 785, 63 S Ct 982, 87 L ed 1152 (1943). Therefore, while the law now gives the accused the privilege to have a qualified lawyer detailed to represent him, it also permits him the right, if the officer is available, to choose whom he pleases. How then can it be maintained that we have the inherent right to rewrite an act of Congress?

I have dwelt upon the nature of the right partly as a prelude to the following discussion. It seems to me that, unless there is some overriding policy which demands a reversal of accused's conviction, he is obtaining a rehearing under a mistaken belief that the court-martial system must be protected. I find no overriding policy and, if protection is necessary, it can be provided in an appropriate manner. For the purpose of this point, I am willing to assume that we have the power to prescribe the qualifications of those individuals who can practice before military courts. Even when I make that concession, I am convinced that the qualifications we prescribe should not be applied retroactively. Before a rule is enforced, it should be properly adopted by the Court, promulgated to those who will be bound by its terms, and given effect after they have had an opportunity to meet its requirements. Here the decision makes the rule applicable before adoption, and the accused is granted a benefit to which he is not entitled. The practice which has been in vogue for many years does not need to be rendered topsy-turvy overnight and, if changes are required,

they can be made in an orderly manner and without such haste.

Finally, the privilege or right in the backdrop of this case is not so fundamental that it cannot be waived and here, if there was error, it was consciously and knowingly induced. A person can represent himself in any court, and he cannot be prejudiced substantially if he has some assistance. In this particular case, individual counsel performed his task in an outstanding manner but, in spite of his success, the accused now contends he is entitled to a rehearing because he should have been represented by the qualified appointed counsel who was intentionally and purposefully rejected by him. A sketchy reference to the record shows that both individual counsel and duly appointed defense counsel appeared for the accused at his arraignment. While the Court's opinion sets out a colloquy between the law officer and counsel, it does not quote the first answer which includes a request by the accused through his individual counsel to excuse his qualified lawyer. This statement precedes the quotation set out by the author Judge:

"IC: The qualifications of the individual counsel—Counsel has not been certified by the Judge Advocate General and is not qualified under Article 27b. The accused elects to be defended by individual counsel and we request that the regularly appointed defense counsel be excused."

The law officer granted the request after the accused personally joined in the solicitation. Therefore, if this was not a conscious self-induced error, then I am hard put to find one. For my part, I am not willing to permit a mentally competent person to demand a right or privilege at trial and then on appeal found a reversal on the basis that he was given the privilege he demanded. No criminal system can endure which permits an accused to trifle with the courts in that manner.

I would affirm the decision of the board of review.