### UNITED STATES

v.

**Sean K. WILLIAMS, 258 55 7856, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 98 00213.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 24 June 1997.

Decided 16 July 1999.

---

LT John D. Holden, JAGC, USNR, Appellate Defense Counsel.

LT William C. Minick, JAGC, USNR, Appellate Government Counsel.

Before SEFTON, Chief Judge, LEO, Senior Judge, and ANDERSON, Appellate Military Judge.

PER CURIAM:

Appellant was tried on 24 June 1997 by a military judge sitting alone as a general court-martial. Pursuant to his pleas, he was convicted of conspiracy to commit larceny and forgery, making a false official statement, 3 specifications of larceny, 5 specifications of forgery, wrongfully forging a military identification card, wrongfully using a military identification card, and removing and disposing of property to prevent its seizure, in violation of Articles 81, 107, 121, 123, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, 921, 923, and 934 (1994). Appellant was sentenced to a dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged and, except for the dishonorable discharge, ordered it executed. However, pursuant to a pretrial agreement, the convening authority suspended all confinement in excess of 54 months for a period of 12 months from the date of his action.

We have examined the record of trial, the errors assigned by appellant, and the Government's response. After careful consideration, we conclude the findings and sentence to be correct in law and fact and find no error materially prejudicial to the substantial rights of the appellant was committed. Arts.

59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### In Personam Jurisdiction

#### 1. Factual Background

The following facts are undisputed: appellant validly enlisted in the Marine Corps and began his period of active service on 20 June 1994; his final duty assignment was to the School of Infantry [SOI] at Marine Corps Base, Camp Lejeune, North Carolina; he worked in the Student Administrative Office of SOI; because of an injury to his back, appellant had been evaluated by a Physical Evaluation Board [PEB]; in a report dated 2 December 1996, the board found appellant "unfit for duty;" as a result of this finding, appellant was to be separated from the Marine Corps and was sent home awaiting final disposition of his PEB; the orders specifically noted "[y]ou will continue to be carried on the rolls of this organization;" that the orders cautioned appellant that "[i]f your commander notifies you to return to your station of duty for further hearing, these orders will remain in effect for the return travel involved;" and on 18 December 1996, appellant departed from Camp Lejuene, North Carolina and arrived at his home in Savannah, Georgia.

Meanwhile, an investigation was being conducted by the Naval Criminal Investigative Service at Camp Lejeune into a series of thefts of Armed Services Identification Cards and related fraudulent purchases. The investigation focused on individuals in the SOI Student Administrative Office who would have had access to blank military ID cards. Appellant was such a person. Accordingly, on 15 January 1997, appellant was placed on legal hold by his command. R.M. Carroll ltr of 15 Jan. 97; Affidavit of Lieutenant Colonel R.M. Carroll of 21 May 1999 at ¶ 3, 4.

Apparently without the *direct* knowledge of the Commanding Officer, appellant's previously prepared Certificate of Release [DD 214], with the discharge date of 15 January 1997, was mailed by the SOI Staff Administrative Office (which handled administration for permanent personnel assigned to SOI for duty). Affidavit of Appellant of 20 Nov. 1998 at ¶ 15, 16. The DD 214 arrived at appel-

lant's mother-in-law's residence on 16 January 1997. *Id.* at ¶ 16.

On 21 January 1997, appellant was interviewed by the criminal investigator conducting the investigation into the larcenies mentioned above at his parents' home in Georgia. Appellant falsely denied any knowledge of or involvement in criminal activity. Appellant was ordered by his command to return to SOI in orders dated 17 January 1997 which stated that his "orders awaiting final disposition of a physical evaluation board" were "hereby terminated." He was "directed to proceed and report ... for duty." Appellant's Motion to Attach of 22 Feb. 1999. On 22 January 1997, appellant returned to Camp Lejuene pursuant to these orders. Affidavit of Appellant of 20 Nov. 1998 at ¶ 5. Appellant interposed no objection to his continued retention by the military at any time prior to his court-martial.

Charges were, in due course, preferred and referred against appellant, and he was arraigned on 8 May 1997. Record at 11. Appellant entered mixed pleas in accord with the terms of a pretrial agreement on 24 June 1997. Record at 15. During the ensuing providence inquiry, appellant stated under oath to the military judge that he was "currently on active duty" in the U.S. Marine Corps and had never been "discharged or released from active service." Record at 31.

#### 2. Discussion of the Applicable Law

■ For a court-martial to have jurisdiction, "the accused must be a person subject to court-martial jurisdiction." RULE FOR COURTS-MARTIAL 201(b)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). A court-martial may try "any person when authorized to do so under the code." R.C.M. 202(a). Jurisdiction of a court-martial depends solely on the accused's status as a member of the military. *Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987). Failure to raise lack of jurisdiction at trial *does not* waive the issue. R.C.M. 905(e).

■ "[T]he delivery of a valid discharge certificate or its equivalent ordinarily serves to terminate court-martial jurisdiction." R.C.M. 202(a), Discussion at ¶ (2)(B).

"[C]ourt-martial jurisdiction normally continues past the time of scheduled separation until a discharge certificate or its equivalent is delivered or until the Government fails to act within a reasonable time after the person objects to continued retention." *Id.* In this instance, appellant never objected to continued jurisdiction below, so that our inquiry must focus upon whether a discharge certificate or its equivalent was delivered to appellant so as to effect his separation prior to "action with a view towards trial." R.C.M. 202(c)(1); *see also* Marine Corps Separation and Retirement Manual at ¶ 1008.1b(1)(22 June 1989).

If jurisdiction did attach based upon the eleventh hour action of Lieutenant Colonel Carroll in signing the letter putting appellant's separation on hold, it continues throughout the trial and appellate process.[1] R.C.M. 202(c)(1).

The issue was not waived by appellant's failure to object below. However, we are mindful of his voluntary submission to military authority, prompt return to military control when ordered, negotiation of a pretrial agreement, and sworn submissions to the court below that he was a member of the armed forces on active duty at both the time of the offenses and trial.

We find that court-martial jurisdiction over appellant attached and was never terminated. R.C.M. 202(c)(1); MARCORSEPMAN at ¶ 1008.1b(1); *see also United States v. Self,* 13 M.J. 132, 138 (C.M.A.1982)("[a]ny acts of a military official which authoritatively presage a court-martial, when viewed in light of the surrounding circumstances, are surely sufficient … to authorize retention on active

duty for purposes of trial"); *United States v. Smith,* 4 M.J. 265 (C.M.A.1978); *United States v. Lee,* 43 M.J. 794, 797 (N.M.Ct.Crim. App.1995) ("investigatory actions," combined with the magnitude of the offenses, are sufficient to constitute "action with a view to trial").

Appellant asserts that the legal hold letter was fraudulently prepared. No evidence directly supports that conclusion, and the available direct evidence specifically refutes it. Appellant chiefly relies on Gunnery Sergeant Davis, who was not aware of the issuance of the letter, and evidences some apparent pique that he was not informed or "in the loop." This approach ignores the direct evidence provided by the signatory of the letter, Lieutenant Colonel Carroll, who was the acting commander responsible, and a witness to the signing, Chief Warrant Officer–3 Ramos. We reject appellant's unfounded contention.

Appellant also contends that since the local "unit diary" did not reflect his change in status, his failure of jurisdiction proposition is supported. He ignores the fact that the Unit Diary of the Personnel Management Division, Manpower Department, Headquarters Marine Corps made such an entry.

Appellant next asserts that even if the legal hold letter is not the product of malfeasance by his command, it was "ineffective" because "[a]ppellant's DD 214 was effective from the same day, 15 January 1997, therefore [he] was already discharged at the time he was purportedly placed on legal hold." Appellant's Brief at 6. Appellant provides no authority for this position.[2] However, in fact appellant's discharge was to take effect at 2359 on 15 January 1997.[3] The letter placing

---

**1.** We note here that, while the cases generally talk about situations where the obligated service term has run, we analogize the end of the term of service to the projected discharge as the result of appellant's PEB here. Since the Government made this projected time known, and appellant interposed no objection to it, we consider the term of service to have been mutually arrived at and agreed as 15 January 1997. We note, however, that appellant's *term of obligated service had not expired* at either the time of the "legal hold" letter's issuance or even the time of trial below.

**2.** The MARCORSEPMAN is silent directly on this issue, as it provides only that "[a] discharge or separation takes effect upon delivery of a valid

discharge or separation document." MARCORSEPMAN at ¶ 1007.1. Concerning members at home awaiting a mailed discharge certificate, it provides that "[c]ommanders will mail the discharge certificate to the Marine concerned using first class mail." MARCORSEPMAN at ¶ 1101.2.c.(4)(b)2. No specific provision yields governing authority on the specificity of timing.

**3.** The actual entry is "SNM HAO EFF [service member home awaiting orders effective] 1630/961218—2359/970115." Government's Motion to Attach of 2 June 1999. The entry appears in the "Pay Information" block of appellant's Separation/Travel Pay Certificate of 9 January 1997.

appellant on legal hold was effective when signed. The legal hold letter took effect, albeit by hours, before appellant's discharge.

The erroneous delivery of an otherwise valid discharge certificate previously revoked does not terminate court-martial jurisdiction over a service member. *United States v. Garvin*, 26 M.J. 194, 195–96 (C.M.A.1988). The legal hold letter signed on 15 January 1997 voided appellant's DD 214 before the discharge became effective.[4]

### 3. The Requirement for a *DuBay* [5] Hearing

■ Appellant argues for additional fact-finding based upon our superior Court's holding in *United States v. Ginn*, 47 M.J. 236 (1997). He asserts that we are compelled to return this record to preclude our reliance on "dueling affidavits" presented to us to "clarify" matters. *Ginn*, however, is not without limits, and does not preclude our consideration of affidavits and mandate a fact-finding hearing *in all cases*. *Ginn*, 47 M.J. at 251 n. *. Where, as here, the Government adds additional facts *unrebutted* by appellant, no requirement for a further hearing exists. *Ginn*, 47 M.J. at 242 n. 4. "Findings of fact may be made by a Court of Criminal Appeals where no conflict exists between affidavits submitted by the parties." *Ginn*, 47 M.J. at 243.

The materials provided post-trial by appellant on this issue, some of which do not meet the standards of either an affidavit or a declaration under 28 U.S.C. § 1746, will nonetheless be considered by us, since their authenticity is not in question in any relevant context, and additionally because their content is corroborated by other facts of record. Appellant's materials on this issue essentially boil down to an attestation by both appellant and Gunnery Sergeant [GySgt] Davis that neither saw the legal hold letter or knew of its existence until sometime after 15 January 1997. Taken as fact, these attestations provide no contradictory evidence to the infor-

mation provided by LtCol Carroll and CWO–3 Ramos which indicates that each of these officers *had* knowledge of the operative facts, since they each *participated* in the process which resulted in the legal hold letter being signed on 15 January 1997. GySgt Davis overextended himself in unwarranted speculation in his first submission, (the 22 December 1998 unsworn "affidavit"), a fact aptly illustrated in his later submission, which evidences the fact that his earlier, more sweeping statements were without basis in fact. GySgt Davis Affidavit of 3 June 1999. Appellant likewise states only his unfounded "belief" that he was not placed on legal hold on 15 January 1997. We find these matters just the sort of "speculative or conclusory observations" which fall outside the mandates of *Ginn*. *Ginn*, 47 M.J. at 248. We have no trouble reading all of the submitted post-trial materials (affidavits, declarations, and "near-misses") together and reconciling them with each other. No *DuBay* hearing is required, since we have encountered no burden beyond our powers under Article 66(c), UCMJ.

### 4. Conclusion

We find that the court below had jurisdiction over the appellant. While the action with a view toward trial occurred at the eleventh hour, it nonetheless occurred in sufficient time to preserve court-martial jurisdiction over appellant. That appellant had the bad fortune to have been discovered a criminal suspect only hours before he might have gone free does not diminish his status as a member of the armed forces subject to military law and court-martial jurisdiction. The recognition of the need for action and the concomitant swift execution of the necessary legal hold by the command prevented a miscarriage of justice. The issue is without merit.

### The Individual Civilian Counsel Qualification Issue

■ Article 38(b)(2), UCMJ, 10 U.S.C. § 838(b)(2), provides that an "accused may

---

**4.** The Government urges us to adopt a hyper-technical "delivery" requirement (mandating that since appellant has alleged only that the DD 214 was received by his "in laws" in Georgia, we must declare the delivery void). We decline to do so, in that it would appear that the Government delivered the document to the location

specified by appellant, and it was duly received at that location despite it's having been previously superceded by the legal hold letter's issuance.

**5.** *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).

be represented by civilian counsel if provided by him." A civilian defense counsel who represents an accused in a court-martial shall be a "member of the bar of a Federal court or the bar of the highest court of a State." R.C.M. 502(d)(3)(A). Such a civilian counsel "must be a member in good standing of a recognized bar." *United States v. Kraskous-kas,* 9 C.M.A. 607, 26 C.M.R. 387, 389, 1958 WL 3387 (1958).

■ Civilian counsel in this instance was a member of three such "recognized" bars.[6] Appellant concedes that civilian trial defense counsel was admitted to the state bars of Iowa, Hawaii, and Texas. Appellant's Supplemental Brief of 3 Feb 1999 at 2. We find that the requirements of R.C.M. 502 have been satisfied. R.C.M. 502(d)(3)(A) specifies no additional requirement that the practitioner must be able to practice in the "home" state. Inactive status is not precluded. We note that in the materials before us, the counsel in question was, in fact, certified to be a "lawyer in good standing" in the state of Iowa. Iowa Supreme Court ltr of 10 Dec 1998.

We find no support for appellant's contention that his representation at trial was "ineffective assistance of counsel *per se.*" We find no evidence of disciplinary action or pending complaints against the named counsel. He simply, for whatever reason, appears to have assumed an "inactive" practice status in each of the 3 bars of which he was a member. Whether his motivation was fiscal, geographical, or whimsical is neither clear nor relevant. We can find no requirement for more from him.[7]

Even where some misfeasance or malfeasance of counsel is evident, no *per se* ineffective assistance of counsel arises. *See In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20

L.Ed.2d 117 (1968); *Solina v. United States,* 709 F.2d 160 (2d Cir.1983); *Beto v. Barfield,* 391 F.2d 275 (5th Cir.1968). Since we have no scintilla of evidence that counsel here did not effectively represent appellant's interests, we are unmoved by his plea for an application of a *per se* ineffective assistance rule. Civilian counsel conducted effective pretrial negotiations which resulted in a pretrial agreement, cross-examined the main Government witnesses at the Article 32, UCMJ, 10 U.S.C. § 832 hearing, and called witnesses in mitigation who cast appellant in a positive light, as well as delivering appellant's unsworn statement which emphasized appellant's remorse for the crimes he committed. Civilian counsel made a cogent sentencing argument, and likely materially aided appellant in obtaining an adjudged sentence to confinement that was well below the maximum of 53 years that could have been adjudged. Appellant expressly agreed that he was "satisfied that [civilian defense counsel]'s advice ha[d] been in [his] best interest." Record at 73–74. Appellant demonstrates no *actual* prejudice within the meaning of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *United States v. Scott,* 24 M.J. 186, 188 (C.M.A.1987), and we presume none. The issue is without merit.

### Conclusion

The findings and sentence, as approved on review below, are affirmed.

---

**6.** *See* Appellant's Motion to Attach Documents of 26 Jan. 1999. "[L]icensed to practice as an attorney and counselor at law in the State of Texas." Supreme Court of Texas ltr of 29 Dec. 1998. "Admitted to the State Bar of Iowa" and a "lawyer in good standing." Iowa Supreme Court ltr of 10 Dec. 1998. "[A] licensed attorney in Hawaii." Hawaii Supreme Court ltr of 5 Jan. 1998.

**7.** An inactive status, standing alone, is not dispositive. Many military practitioners are spe-

cifically exempted from state continuing legal education requirements and are carried in an inactive status during their periods of active duty with the armed forces. *See* Judge Advocate General of the Navy Instruction 5803.1A Rule 8–6e (Ch. 3, 20 May 1996) ("[a]n individual may be considered inactive as to the practice of law within a particular jurisdiction and still be considered in good standing.").