*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, GROSS, and MIZER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Keven C. McNulty**
Electrician's Mate (Nuclear) First Class (E-6), U.S. Navy
*Appellant*

**No. 202300070**

_____

Decided: 12 April 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Andrea K. Lockhart

Sentence adjudged 2 November 2022 by a special court-martial convened at Naval Base San Diego, San Diego, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-3, confinement for 5 months, and a bad-conduct discharge.

For Appellant:
*Commander Lindsay W. Pepi, JAGC, USN*

For Appellee:
*Lieutenant Colonel James A. Burkart, USMC*
*Major Claire Finnen, USMC*

Judge MIZER delivered the opinion of the Court, in which Chief Judge HOLIFIELD and Judge GROSS joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

MIZER, Judge:

Appellant was convicted, pursuant to his pleas, of one specification of violating a lawful order, and one specification of abuse of his position as a military recruiter, in violation of Articles 92 and 93a, Uniform Code of Military Justice (UCMJ).[1]

Appellant asserts two assignments of error: (1) trial defense counsel was ineffective in not seeking a Rule for Courts-Martial (R.C.M.) 706 inquiry into the mental capacity or mental responsibility of Appellant; and (2) Appellant's court-martial, which took place in California, was without jurisdiction where the military judge was admitted to the State Bar of California, but was in an inactive status and therefore ineligible to practice law in California. We find no prejudicial error and affirm.

## I. BACKGROUND

*1. Appellant's Relationship with a Seventeen-Year-Old Navy Applicant.*

In early 2021, Ms. Jones,[2] then a seventeen-year-old high school student, began meeting with a Navy recruiter at Navy Recruiting Station Henderson in Nevada.[3] When Ms. Jones didn't score high enough on the Armed Services Vocational Aptitude Battery to enlist in the Navy, Appellant, a thirty-two-year-old recruiter at the recruiting station, offered to tutor Ms. Jones.[4]

Appellant's relationship with Ms. Jones quickly progressed from tutoring to exchanging sexually explicit text messages.[5] A few months later, on 14 May

———————————

[1] 10 U.S.C. §§ 892 and 893a.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[3] Pros. Ex. 1 at 2.

[4] *Id.*

[5] *Id.*

2021, Appellant had sex with Ms. Jones in a Las Vegas hotel room.[6] By August, Ms. Jones was living with Appellant.[7] She turned eighteen later that month.[8]

Naturally concerned, Ms. Jones's mother confiscated her daughter's computer and used her iCloud password to access text messages that her daughter exchanged with Appellant.[9] Altogether, she copied twenty-nine pages of texts and photographs.

On 12 August 2021, Ms. Jones's mother sent the text messages and photographs she found on her daughter's computer to Appellant's chain of command.[10] The next day, Appellant's Commanding Officer issued Appellant a No Contact Order.[11] Appellant violated this order by continuing to live with Ms. Jones until 10 January 2022 when their relationship, which by then had become tumultuous,[12] ran its course.

### 2. *Appellant's Post-Trial Allegation of Ineffective Assistance of Counsel.*

On appeal, Appellant alleges that his trial defense counsel was ineffective for not requesting an inquiry into Appellant's mental capacity or mental responsibility pursuant to R.C.M. 706.[13] In support of this claim, Appellant offers excerpts from his medical records that are often inconsistent with other documents he asks the Court to consider.

In a sworn declaration, Appellant describes being treated for anxiety and depression in the weeks and months preceding his court-martial.[14] Appellant avers that he was involuntarily admitted to the hospital at Nellis Air Force Base on 22 June 2022 "for anxiety, high blood pressure, and behavioral concerns related to mental health."[15] Another document, purportedly from the

---

[6] *Id.*

[7] *Id.*

[8] Pros. Ex. 3 at 11.

[9] Pros. Ex. 2 at 4.

[10] *Id.*

[11] Pros. Ex. 1 at 1.

[12] Appellant was initially charged with two specifications of domestic violence by assaulting Ms. Jones, and one specification of abusing her cat. These allegations were withdrawn and later dismissed pursuant to a plea agreement with the convening authority. App. Ex. XIX at 1-6.

[13] Appellant's Br. at 2.

[14] Appellant's Mot. to Attach., App'x A at 2.

[15] *Id.*

Nellis Mental Health Clinic and dated 26 August 2022, approved Appellant for twelve sessions with an off-base medical provider.[16] For what, we don't know.

Two entries from his medical record while confined at the Naval Consolidated Brig Miramar, one dated 1 December 2022 and the other 7 February 2023, reflect that Appellant "denied any past psychiatric hospitalizations."[17] They do reflect, however, Appellant's diagnosis of Attention-Deficit/Hyperactivity Disorder (ADHD), Predominantly Inattentive Type. The entries also reflect a previous diagnosis of Posttraumatic Stress Disorder (PTSD) from when he was "stabbed by his girlfriend."[18] Appellant was prescribed medication to treat his ADHD.

In another document, which appears to be only the second page of Veterans Administration Form, a former shipmate describes a possible Traumatic Brain Injury (TBI) in March of 2020 from when another Sailor accidentally slammed a scuttle on Appellant's head while onboard USS Ronald Reagan (CVN-76).[19] Aside from this factual account, this injury apparently remains medically undiagnosed. Appellant did not seek treatment at the time of the injury and returned to work after regaining consciousness.

But in the 1 December 2022 medical entry Appellant "denied any head injuries or chronic medical conditions."[20] It wasn't until two months later that he told another medical provider about the incident on Ronald Reagan and that he had "been diagnosed with migraines."[21] The provider noted that his reported head injury "could be related with psychological and inattentive symptoms, and migraines."[22] The provider concluded that Appellant "may benefit from referral or evaluation by neurologist [sic] or TBI clinic."[23]

Appellant further states that he informed his defense team about his "ADHD diagnosis upon [their] first conversation in April 2022 as well as [his]

---

[16] Appellant's Mot. to Attach., App'x A, Encl. 2.

[17] Appellant's Mot. to Attach., App'x A, Encl. 4 at 4; Encl. 5 at 4.

[18] Appellant's Mot. to Attach., App'x A, Encl. 4 at 1.

[19] Appellant's Mot. to Attach., App'x A, Encl. 1.

[20] Appellant's Mot. to Attach., App'x A, Encl. 4 at 4.

[21] Appellant's Mot. to Attach., App'x A, Encl. 5 at 1.

[22] Appellant's Mot. to Attach., App'x A, Encl. 5 at 5.

[23] *Id.*

intention to seek help from being shaken up by some scary things that happened to [him]."[24] He also informed them that he "was having panic attacks and was in the mental hospital."[25] And he provided his defense team with a flash drive of documents related to Appellant's mental health.[26]

Appellant avers that he has no recollection of his trial defense counsel discussing an R.C.M. 706 inquiry with him.[27] As set forth below, we don't find that surprising.

## II. DISCUSSION

### A. Appellant's Trial Defense Counsel were not Constitutionally Ineffective for Failing to Request an Inquiry into Appellant's Capacity to Stand Trial or a Potential Mental Responsibility Defense.

*1. Capacity to Stand Trial and the Military Mental Responsibility Defense.*

In the military, "[n]o person may be brought to trial by court-martial if that person is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings against them or to conduct or cooperate intelligently in the defense of the case."[28] Mental capacity is presumed unless the contrary is established by a preponderance of the evidence.[29]

Relatedly, the affirmative defense of lack of mental responsibility requires the accused to prove, by clear and convincing evidence, that at the time of the offense, (1) the accused suffered from a "severe mental disease or defect," and (2) as a result of that mental disease or defect, the accused was "unable to appreciate" either (a) the "nature and quality" of his acts, or (b) the "wrongfulness" of his acts.[30]

"Mental disease or defect does not otherwise constitute a defense."[31] "The insanity defense is unusual among affirmative defenses in that it is currently

---

[24] Appellant's Mot. to Attach., App'x A at 3.

[25] *Id.*

[26] Appellant's Mot. to Attach., App'x A at 4.

[27] Appellant's Mot. to Attach., App'x A at 3.

[28] R.C.M. 909(a).

[29] R.C.M. 909(b); (e)(2).

[30] 10 U.S.C. § 850a (2019); R.C.M. 916(k).

[31] *Id.*

one of only two defenses under the UCMJ for which the accused, not the Government, bears the burden of proof at trial."[32] The burden never shifts back to the Government to prove sanity beyond a reasonable doubt.[33]

Military courts have long given "preferential treatment to the question of mental responsibility of a military member, even though the matter was not litigated at trial."[34] And it is the responsibility of all involved in the court-martial process "to bring to the attention of the convening authority or military judge any condition or behavior that may reasonably call into question the mental responsibility or competence of an accused."[35]

This remains true when an accused pleads guilty as in this case.[36] While a military judge can presume, in the absence of evidence to the contrary, both that the accused is sane and that defense counsel is competent, if the accused's statements or other material in the record indicate a history of mental disease or defect, the military judge must determine whether that information raises either a conflict with the plea or only the "mere possibility" of the insanity defense.[37]

### 2. Ineffective Assistance of Counsel in the Context of a Guilty Plea.

To establish a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice.[38] "Surmounting *Strickland's* high bar is never an easy task."[39]

Ineffectiveness-of-counsel claims may be resolved on either prong.[40] With respect to the first prong, whether counsel's performance was deficient, courts "must indulge a strong presumption that counsel's conduct falls within the

---

[32] *United States v. Martin*, 56 M.J. 97, 104 (C.A.A.F. 2001).

[33] *Id.*

[34] *United States v. Navarette*, 81 M.J. 400, 404 (C.A.A.F. 2021) (citations omitted).

[35] *United States v. Best*, 61 M.J. 376, 382 (C.A.A.F. 2005) (citing *United States v. Collins*, 60 M.J. 261 (C.A.A.F. 2004)).

[36] *United States v. Riddle*, 67 M.J. 335, 338 (C.A.A.F. 2009).

[37] *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007).

[38] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[39] *Padilla v. Kentucky*, 559 U.S. 356, 357 (2010) (citations omitted).

[40] *Strickland*, 466 U.S. at 697.

wide range of reasonable professional assistance."[41] In order to establish deficient performance, Appellant must establish that counsel's "representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."[42]

The *Strickland* test applies in the context of guilty pleas where an appellant challenges the plea based on the ineffective assistance of counsel.[43] To satisfy the prejudice prong of *Strickland* in a guilty plea case, the Defense must also "show specifically that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[44] In proving *Strickland* prejudice within the context of trial defense counsel's failure to fully investigate an accused's mental capacity, an appellant must show only a reasonable probability that he was either insane at the time of the offense or incompetent at the time of trial.[45]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome. That requires a substantial, not just conceivable, likelihood of a different result."[46]

Finally, where, as here, Appellant has submitted an affidavit and there is no corresponding affidavit from trial defense counsel, we must first consider whether "the allegation and the record contain evidence which, if unrebutted, would overcome the presumption of competence."[47] If this threshold is met, we must then compel the defense counsel to explain their actions.[48]

---

[41] *Id.* at 689.

[42] *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 690).

[43] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

[44] *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (internal quotation omitted) (citations omitted).

[45] *Matthews v. State*, 358 S.C. 456, 459 (S.C. 2004) (citing *Jeter v. State*, 308 S.C. 230, 232 (S.C. 1992) (citations omitted) (cleaned up).

[46] *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citations omitted) (cleaned up).

[47] *United States v. Melson*, 66 M.J. 346, 350 (C.A.A.F. 2008) (citing *United States v. Lewis*, 42 M.J. 1, 6 (C.A.A.F. 1996)).

[48] *Id.* at 350 (citing *United States v. Grigoruk*, 52 M.J. 312, 315-16 (C.A.A.F. 2000).

*3. Appellant's Counsel was not Constitutionally Ineffective.*

This Court has held that R.C.M. 706's standard to warrant further inquiry into the mental capacity or mental responsibility of an accused—reason to believe that the accused lacked mental responsibility for any offense charged—is "very low."[49] But the "purpose of the R.C.M. 706 sanity board is to determine if an accused 'lacks capacity to stand trial' or 'lacked mental responsibility for any offense charged.'"[50] Thus, trial participants must only alert a military judge to "any condition or behavior that may *reasonably* call into question the mental responsibility or competence of an accused."[51]

In *Nelson*, this Court reversed a conviction for the ineffective assistance of counsel where trial defense counsel failed to request an R.C.M. 706 inquiry even though counsel was confronted with the accused's "extensive psychiatric treatment. . . increasingly erratic, manic behavior" and both a diagnosis of bipolar disorder and a family history of the disease.[52] Importantly, our superior court has repeatedly concluded that bipolar disorder "may exist with enough severity to raise a substantial question regarding the issue of the accused's mental responsibility."[53] But not always.[54]

In contrast, the medical records submitted by Appellant diagnose him with "ADHD, predominantly inattentive type."[55] Appellant "denied any past psychiatric hospitalizations."[56] He further denied any manic or psychotic symptoms.[57] Instead, his symptoms, since childhood, include "restlessness, not paying attention in class, difficulty with multi-tasking, being easily distracted, being impulsive, not being able to sustain mental focus, day dreaming and looking out [the] window in class."[58]

---

[49] *United States v. Nelson*, 2021 CCA LEXIS 647, *11 (N-M. Ct. Crim. App. 2021).

[50] *Collins*, 60 M.J. at 266 (citing *United States v. Murphy*, 50 M.J. 4, 12 (C.A.A.F. 1998)) (internal quotations and citation omitted).

[51] *Best*, 61 M.J. at 382 (emphasis added) (citation omitted).

[52] *United States v. Nelson*, 2021 CCA LEXIS 647, *3, *11 (N-M. Ct. Crim. App. 2021).

[53] *Shaw*, 64 M.J. at 463.

[54] *Id.* at 464.

[55] Appellant's Mot. to Attach., App'x A, Encl. 4 at 6.

[56] Appellant's Mot. to Attach., App'x A, Encl. 4 at 4.

[57] Appellant's Mot. to Attach., App'x A, Encl. 4 at 2.

[58] Appellant's Mot. to Attach., App'x A, Encl. 4 at 1.

These symptoms are indeed consistent with a diagnosis of ADHD according to the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V-TR"), "the authoritative reference used in diagnosing mental disorders,"[59] upon which trial participants can rely in assessing whether further investigation is warranted.[60]

But R.C.M. 706(c)(2)(A) makes clear that a "severe mental disease or defect" does not include "minor disorders such as nonpsychotic behavior disorders and personality defects."[61] Thus, R.C.M. 706 is narrowly targeted at "severe mental disease" most commonly, but not always, evidenced by a psychotic episode or disorder.[62] And unlike bipolar disorder, we are unable find any case where a criminal defendant has so much as raised either the capacity to stand trial or an insanity defense solely on the basis of an ADHD diagnosis.

We are compelled to stress that when it is apparent that an accused has some mental condition that warrants further investigation, the failure to investigate is ineffective assistance, particularly in a capital case.[63] But this just isn't that case.

We do not doubt Appellant's attestation that, at the time of his plea, he "wholeheartedly believe[s] that [he] was suffering from mental illness[.]"[64] "[A]nd it is a given that being a defendant in a criminal trial is an incredibly stressful experience."[65]

---

[59] *Young v. Murphy*, 615 F.3d 59, 61 n.1 (1st Cir. 2010).

[60] *See*, American Psychiatric Association, *Diagnostic and Statistic Manual of Mental Disorders* 68 (5th ed. text rev. 2022). We caution that the DSM-V-TR is merely a tool, and trial participants should not play "amateur psychologist." *See, Bacon v. Mandell*, 2012 U.S. Dist. LEXIS 132231, *60 N. 30 (D.N.J. 2012). Attempts to "distinguish between the truly incompetent and those who—because of a personality disorder or other cause—behave in a foolish or bizarre way, hold irrational beliefs, or are simply inept," *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003), should be left to medical professionals. *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001) (observing that counsel are not trained mental health professionals).

[61] American Psychiatric Association, *Diagnostic and Statistic Manual of Mental Disorders* 68 (5th ed. text rev. 2022).

[62] *See*, *e.g.*, DSM-V-TR, at 104-108 (delusional disorder), 113-116 (schizophrenia).

[63] *See, e.g., Kubat v. Thieret*, 867 F.2d 351 (7th Cir. 1989).

[64] Appellant's Mot. to Attach., App'x A at 4.

[65] *United States v. Yates*, 2020 U.S. Dist. LEXIS 107339, *20-21 (D. Conn. 2020); *United States v. Robinson*, 427 Fed. Appx. 163, 167 (3rd Cir. 2011).

But on the record before us, which includes twenty-nine pages of contemporaneous text messages with Ms. Jones during a period that he was purportedly lacking mental responsibility, we conclude that the failure of Appellant's trial defense counsel to request an inquiry as to his sanity during his month's-long relationship with Ms. Jones, or whether he was incapable of assisting in his own defense, did not constitute deficient performance.[66]

Finally, even if we were to conclude that trial defense counsel's performance was deficient, Appellant cannot demonstrate prejudice where there is no "reasonable probability that he was either insane at the time of the offense or incompetent at the time of trial."[67] Critically, neither Appellant nor his appellate defense counsel allege that he may have lacked any mental responsibility during his relationship with Ms. Jones or that there is evidence to suggest he was incapable of assisting in his defense.[68]

And *that* is the sine qua non of an R.C.M. 706 inquiry.

After conducting a searching review of the record, there is no reason to believe that Appellant lacked mental responsibility for the charged offenses or that he lacked the capacity to stand trial. Therefore, we conclude Appellant's trial defense counsel was not constitutionally ineffective when he failed to request an R.C.M. 706 board before Appellant's plea.

## B. The Military Judge's Inactive Status as a Member of the State Bar of California did not Divest Appellant's Court-Martial of Jurisdiction.

The facts necessary to resolve this assignment of error are fully set forth in *United States v. Painter*, 82 M.J. 806, 807 (N-M. Ct. Crim. App. 2022). In short, in July 2021, at the height of the COVID-19 pandemic, the Supreme Court of California suspended the military judge that would later preside in this case

---

[66] Although not raised by Appellant, we also conclude that it is not "fairly debatable among jurists of reason," *Naverette*, 81 M.J. at 405, whether Appellant's diagnosis of ADHD renders him incapable of cooperating intelligently in these appellate proceedings.

[67] *Matthews*, 358 S.C. at 459 (citation omitted); *United States v. Harris*, 61 M.J. 391, 396 (C.A.A.F. 2005)).

[68] Although not raised by Appellant, we also do not find trial defense counsel's performance deficient in failing to bring either Appellant's ADHD diagnosis or his purported TBI to the attention of the military judge for purposes of extenuation and mitigation during his sentencing proceeding. It is also impossible to divine prejudice where Appellant was sentenced to the minimum term of confinement under the plea agreement. *Compare* R. at 176 *with* App. Ex. XIX at 7.

from the practice of law after she failed to pay her annual bar dues.[69] When she discovered this on 10 March 2022, she promptly paid her dues and was returned to inactive status of the State Bar of California—a status she has held without incident since 2000.[70] Nevertheless, we set aside the conviction in *Painter* for lack of jurisdiction because the military judge, as required by Article 26, UCMJ and R.C.M. 502, was no longer qualified to serve as a military judge in that court-martial once she was *suspended* from the practice of law by the Supreme Court of California.[71]

This case arose eight months after the military judge returned to inactive status in California, when Appellant appeared before her to plead guilty. But because attorneys in an inactive status of the State Bar of California are not authorized to practice law in California, Appellant maintains that his court-martial, which took place in California, lacked jurisdiction. We disagree.

*1. Bar Membership and Certification by the Judge Advocate General are the only Statutory Requirements Imposed by Article 26, UCMJ.*

"Statutory construction begins—and often ends—with the plain language" of a statute.[72] The relevant statute here, Article 26, UCMJ, establishes just two prerequisites for military judges: (1) bar membership, and (2) certification by the Judge Advocate General (JAG) of the relevant branch of military service.

None of this is at issue here as Appellant doesn't assert that the military judge below was decertified by the JAG of the Navy or disbarred by the Supreme Court of California at the time of Appellant's plea. Instead, citing *Painter*, Appellant maintains that the JAG of the Navy, through operation of JAGINST 5803.2B, has *sub silentio* disqualified the military judge in this case because she does not meet the requirements set by the State Bar of California "for eligibility to practice law."[73]

---

[69] *United States v. Painter*, 82 M.J. 806, 807 (N-M. Ct. Crim. App. 2022).

[70] *Id.*

[71] *Id.* at 809.

[72] *United States v. Perkins*, 78 M.J. 550, 563 (N-M. Ct. Crim. App. 2018) (citation omitted).

[73] Appellant's Br. at 14 (citing JAGINST 5803.2B (13 Jan. 2016)). JAGINST 5803.2B requires covered attorneys to remain in good standing, which means the covered attorney: (1) is subject to the jurisdiction's disciplinary review process; (2) has not been suspended or disbarred from the practice of law within the jurisdiction; (3) is

*2. JAGINST 5803.2B Expressly Authorizes Judge Advocates to Practice While in an Inactive Status of a State Bar.*

Everyone agrees that Article 26, UCMJ, and R.C.M. 502 together establish a floor for the qualifications of judge advocates serving as military judges. Everyone also agrees that Congress has delegated the responsibility of determining who possesses the requisite qualifications to serve as a military judge to the JAG. The only question here is whether the JAG of the Navy also requires military judges to remain in an active status with the State Bar of California in order to serve as a military judge, something he certainly has the authority to do.[74] But we conclude that he has not done so.

We are guided in our inquiry by *Early v. Becerra,*[75] where the petitioner sought to remove Xavier Becerra as a candidate for Attorney General of California because his State Bar status was "inactive" during the five years preceding the November 2018 election and he was therefore, according to the petitioner, not "admitted to practice" in California as required by California law.

Citing the State Bar Act, the Court noted that only the Supreme Court of California could admit, disbar, or suspend an attorney after she is admitted to practice.[76] And the Court held that "admission to practice law as a member of the State Bar and the status of being *admitted* to the bar are distinct from the *status* of being an *inactive* member."[77] "In sum, under the State Bar Act, an inactive member may not practice law in California but remains admitted in the state and a member of the bar."[78]

Similarly, we hold that "a current license to practice law" is all that is required by JAGINST 5803.2B. And that instruction makes clear that the JAG

---

current on the payment of all required fees; (4) has met applicable continuing legal education requirements which the jurisdiction has imposed (or the cognizant authority has waived); and (5) has met any other requirements the cognizant authority set for eligibility to practice law. *Id.*

[74] *See, e.g., United States v. Romano*, 46 M.J. 269, 274 (C.A.A.F. 1997) (noting that lower sources of authority may grant additional or greater rights than a higher source so long as those additional rights do not conflict with a higher source).

[75] *Early v. Becerra*, 47 Cal. App. 5th 325, 332 (Cal. Ct. App. 2020).

[76] *Early*, 47 Cal. App. 5th at 332 (citing Cal. Bus. & Prof. Code § 6064).

[77] *Id.* (emphasis added).

[78] *Id.* at 332.

"relies on the licensing authority granting the certification or privilege to practice law to define the phrase 'good standing.'"[79] Relevant here, the Supreme Court of California has determined that the military judge in this case meets the requirements for eligibility to practice law even though she is in an inactive status and not authorized to do so. She remains a member of the State Bar, and neither the President, nor Congress, nor the JAG requires anything more.[80]

Our holding is buttressed by the Court of Appeals for the Armed Forces' (C.A.A.F.) decision in *United States v. Steele,*[81] which involved the application of an earlier version of JAGINST 5803.2B[82] to a trial defense counsel who was an inactive member of the bars of Iowa, Hawaii, and Texas.[83] Unlike in *Painter*, there was no evidence the defense counsel in *Steele* "was suspended from practicing in any of the states in which he held bar membership."[84] And the *Steele* Court noted that the defense counsel's inactive status did not reflect adversely on his competence to practice law.[85] The Court also noted that JAGINST 5803.1A expressly authorizes a judge advocate to remain in inactive status and remain in good standing for purposes of this instruction.[86]

The C.A.A.F. concluded, "therefore, inactive status does not bar military counsel from being certified as competent under Article 27(b)(2) to practice before Navy and Marine courts-martial."[87] JAGINST 5803.2B has, for all relevant purposes, remained the same in the more than two decades since *Steele* was decided—across the tenure of nine Judge Advocates General of the Navy. We find no fault, much less error, in the military judge having relied on the express authorization contained in JAGINST 5802.2B to remain an inactive member of the State Bar of California for the entirety of her Navy career.

While the military judge is not currently *authorized* to practice law in California, she remains *eligible* to do so, and that is all that JAGINST 5803.2B

---

[79] JAGINST 5803.2B.

[80] *Early*, 47 Cal. App. 5th at 335.

[81] *United States v. Steele*, 53 M.J. 274 (C.A.A.F. 2000).

[82] JAGINST 5803.2B is for all relevant purposes identical to JAGINST 5803.1A

[83] *Steele*, 53 M.J. at 277.

[84] *Id.*

[85] *Id.*

[86] *Id.* at 278.

[87] *Id.* at 274 (emphasis added).

requires.[88] In light of *Steele*, we conclude that, even in California, inactive status does not bar military judges from sitting as courts-martial under either Article 26(b), R.C.M. 502, or JAGINST 5803.2B.

\*\*\*

Nothing in this opinion should be read to suggest that Appellant's assignment of error does not give us pause. We note the "sagacious words"[89] expressed by Senior Judge Cox in his concurrence in *Steele*, and, more than two decades later, we too are "disquieted by the idea that it is acceptable to allow counsel, military or civilian, to practice before courts-martial when they could not represent civilians in civilian courts."[90]

That is especially true in this case where California's State Bar Act provides that "[n]o person shall practice law in California unless the person is an active member of the State Bar."[91] Separately, Rule 2.30(B) of the Rules of the State Bar of California provides: "No member practicing law, or occupying a position in the employ of or rendering any legal service for an active member, or occupying a position wherein he or she is called upon in any capacity to give legal advice or counsel or examine the law or pass upon the legal effect of any act, document or law, shall be enrolled as an inactive member."[92]

The application that a California attorney must submit in order to transfer to inactive status cautions that "use of 'Attorney-at-Law' on stationary, envelopes or check stock after becoming an inactive licensee could be considered as advertising or holding out that you are practicing or entitled to practice law, which is prohibited by sections 6126 and 6127 of the State Bar Act."[93]

Section 6126 of the State Bar Act makes it a misdemeanor for anyone to hold "himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active licensee of the State Bar, or otherwise authorized pursuant to statute or court rule to practice law in this state at the

---

[88] *See, Early*, 47 Cal. App. 5th at 332 ("In sum, under the State Bar Act, an inactive member may not practice law in California but remains admitted in the state and a member of the bar.").

[89] *United States v. Baker*, 57 M.J. 330, 339 (C.A.A.F. 2002) (Crawford, C.J. dissenting).

[90] *Steele*, 53 M.J. at 278 (Cox, S.J. concurring).

[91] Cal. Bus. & Prof. Code § 6125.

[92] *Id.*

[93] Appellant's Mot. to Attach., App'x D, at 2.

time of doing so[.]"[94] Separately, § 6127 authorizes contempt proceedings in California's courts for anyone holding themselves "out as practicing or as entitled to practice law or otherwise practicing law in any court, without being an active licensee of the State Bar."[95]

Much time has passed since the Military Justice Act of 1968 simultaneously established the office of military judge and set forth the minimal requirements for service that, with minor revisions in 2016, remain in place today.[96] As early as 1978, the predecessor to this Court noted that "'Civilianization' of the military justice system is no mere bubble blown out of a legal pipe dream."[97]

More recently, the Supreme Court has described the military justice system's essential character as, in a word, "judicial."[98] "The procedural protections afforded to a service member are virtually the same as those given in a civilian criminal proceeding, whether state or federal."[99]

In light of the recent, ongoing evolution of military justice, we question whether the minimum requirements established by Article 26, UCMJ, are an anachronism, and whether—in 2024—judge advocates shouldn't be required to be authorized to practice law *somewhere*.[100] And it is not unforeseeable that a California court may eventually be compelled to answer whether attorneys who can't even describe themselves as such on stationary are practicing law when they participate in courts-martial in California.

This Court, however, is obligated to apply the law as it is written.[101] And we have done so.

---

[94] Cal. Bus. & Prof. Code § 6126.

[95] Cal. Bus. & Prof. Code § 6127.

[96] *See generally*, *United States v. Janssen*, 73 M.J. 221, 223 (C.A.A.F. 2014).

[97] *United States v. Rivera*, 6 M.J. 535, 536 n. 3 (N.M.C.C.R. 1978).

[98] *Ortiz v. United States*, 138 S. Ct. 2165, 2174 (2018).

[99] *Id.* (internal citation and quotation marks omitted).

[100] *See, e.g., United States v. Kraskouskas*, 9 U.S.C.M.A. 607, 609 (C.M.A. 1958) ("Without regard to the situation which existed prior to the Code, we believe that the day in which the nonlawyer may practice law before a general court-martial must draw to an end.").

[101] *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149 (10th Cir. 2016) (Gorsuch, J. concurring).

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[102]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[102] Articles 59 & 66, UCMJ.